Jacob L. PETE and James W. Pete

v.

The UNITED STATES.

No. 17–72.

United States Court of Claims.

Jan. 25, 1978.

As Amended Jan. 27, 1978.

Ernest I. Reveal, St. Paul, Minn., for plaintiffs; Solly Robins, St. Paul, Minn., Atty. of record; Robins, Davis & Lyons, St. Paul, Minn., of counsel.

E. Lawrence Hannaway, Land and Natural Resources Div., Dept. of Justice, Washington, D. C., with whom was Asst. Atty. Gen., James W. Moorman, Washington, D. C., for defendant; Herbert Pittle, Washington, D. C., of counsel.

Before DAVIS and KASHIWA, Judges.*

OPINION

KASHIWA, Judge:

The sole issue presented in this case is whether section 304(c) of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) (1970), authorizes the payment of litigation expenses by the United States in an inverse condemnation action involving personal, as opposed to real, property. After consideration of the briefs and oral arguments presented, we find that plaintiffs are entitled to recover appropriate litigation expenses under that statute.

This case is the latest in a protracted line of litigation on defendant's liability for the alleged taking of three cabin barges or large houseboats belonging to plaintiffs.[1] The United States and Canada had established a wilderness area along the international boundary between the two countries. This area, called the Boundary Waters Canoe Area, covers approximately four million acres and includes numerous lakes, rivers, and creeks. Commercial activities were prohibited. The United States condemned all privately owned property under its jurisdiction in the Boundary Waters Canoe Area, including two separate tracts of land owned by plaintiffs (the condemnees in the district court action). Plaintiffs sought to receive compensation for the value of the three barges used in their business, claiming that these barges were rendered useless and that relocation was not feasible. In *United States v. 967.905 Acres of Land, supra* note 1,[2] the court held that the barges were fixtures, thus entitling the condemnees to compensation for their value. The Eighth Circuit, however, reversed the district court, holding that the barges could not properly be characterized as real estate. *United States v. 967.905 Acres of Land,* 447 F.2d 764, 769 (8th Cir. 1971), *cert. denied,* 405 U.S. 974, 92 S.Ct. 1193, 31 L.Ed.2d 248 (1972). Consequently the condemnees were denied compensation for these personal property items, since the eminent domain proceeding brought by the Government was limited to real property.

Plaintiffs subsequently filed an inverse condemnation action in this court, seeking

---

* Senior Judge Durfee participated at oral argument but passed away before final decision was made in this case.

1. The district court's opinion in *United States v. 967.905 Acres of Land,* 305 F.Supp. 83, 84–87 (D.Minn.1969), provides a detailed summation of the facts, which we need not repeat in full.

2. Following this decision, the district court ordered a new trial which, for purposes of the instant case, reached the same result as that reported at 305 F.Supp. 83.

just compensation for the barges under the Fifth Amendment and 28 U.S.C. § 1491 (1970). On March 17, 1976, the court adopted the recommended opinion of Trial Judge Charlotte P. Murphy and held that plaintiffs were entitled to $153,000 as just compensation for the taking of the three barges, plus "interest pursuant to law, and costs, with these amounts to be determined under Rule 131(c)." *Pete v. United States,* 531 F.2d 1018, 1036, 209 Ct.Cl. 270, 300 (1976).

The parties have stipulated and agreed that the appropriate interest rate in this case is 6 percent and that plaintiffs have incurred reasonable attorney fees, costs, and disbursements in the total amount of $31,293.79 in connection with this litigation. In agreeing to the reasonableness of such costs, however, defendant "reserve[d] its right to question the jurisdiction of the Court to award such fees and costs in this case which involves a taking of personal— not real property," notwithstanding this court's March 17, 1976, opinion.

42 U.S.C. § 4654 (1970) provides:

Litigation Expenses

(a) The Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if—

(1) the final judgment is that the Federal agency cannot acquire the real property by condemnation; or

(2) the proceeding is abandoned by the United States.

(b) Any award made pursuant to subsection (a) of this section shall be paid by the head of the Federal agency for whose benefit the condemnation proceedings was instituted.

(c) The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a Federal agency, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

Defendant contends that section 4654(c) only authorizes the award of litigation expenses in an inverse condemnation action involving *real* property and that Congress, in enacting this statute, did not intend to allow the award of litigation expenses for the taking of *personal* property. Defendant's position is premised on the argument that the whole tenor of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601–4655 (1970), deals with the taking by the United States of real property. Not only does the title of the Act itself refer to "real property," but subchapter III (§§ 4651–4655) is entitled "Uniform Real Property Acquisition Policy." Finally, defendant cites the legislative history [3] of sec-

---

**3.** The legislative history of section 304 of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654 (1970), states:

Section 304 would authorize the reimbursement of owner of any right, or title to, or interest in real property for reasonable expenses of litigation, including legal, appraisal and engineering fees, actually incurred because of the taking of real property by Federal agencies, where (1) the court determines

that a condemnation was unauthorized, (2) the Government abandons a condemnation, or (3) a property owner brings an action in the nature of inverse condemnation and obtains an award of compensation. (Tucker Act)

Ordinarily the Government should not be required to pay expenses incurred by property owners in connection with condemnation proceedings. The invitation to increased litigation is evident. [H.R.Rep. No. 91–1656,

tion 4654 in support of this interpretation of the statute.[4]

What defendant does not account for, however, is the fact that section 4654(c), concerning inverse condemnation actions, specifically omits the word "real" as a modifier for "property." Section 4654(a), by way of contrast, specifically limits recovery of litigation expenses in eminent domain proceedings (where the final judgment is that the Government cannot acquire the real property by condemnation or the proceeding is abandoned by the United States) instituted by a federal agency to situations involving the acquisition of "real property." Thus, for us to agree with the defendant's interpretation of section 4654(c), we must conclude that Congress accidently omitted the word "real" from section 4654(c).

■ We cannot agree with defendant that the omission of the word "real" from section 4654(c) was merely due to Congressional inadvertence. The fact that section 4654(a) was expressly limited to certain condemnations of "real" property, while section 4654(c) was not so limited, clearly demonstrates to us that Congress understood the difference between the types of actions. It also demonstrates to us that Congress intended to be more generous in allowing costs in inverse condemnation cases. Nor does our reading of the legislative history of section 4654 lead to a contrary conclusion.

The reasoning behind Congress' decision, as evidenced in section 4654, to permit recovery of litigation expenses in an inverse condemnation action for the taking of property, real or personal, by a federal agency, while denying recovery of litigation expenses in the normal condemnation proceeding, becomes even more apparent when the natures of these two actions are considered. The regular eminent domain proceeding is essentially a one-step proceeding for purposes of litigation expenses: a determination of the amount of compensation due the condemnee for his property. No exhaustive proceedings on the Government's obligation to pay for the property (akin to a trial on liability in an inverse condemnation action) are normally required. By filing a declaration of taking, the Government admits its obligation to compensate the owner for the property taken.

In contrast, an inverse condemnation proceeding is a two-step process. The plaintiff must first institute an action and establish the fact of a taking, the existence of which the Government denies. Only if successful on this first step can the plaintiff advance to the quantum stage to determine the value of the property for purposes of compensation. It is inevitable that the successful plaintiff in the two-step inverse condemnation action will be forced to pay greater litigation expenses than would have been necessary if the federal agency had properly performed its function and condemned the property in question. Congress sought to rectify this situation through section 4654 by allowing recovery of litigation expenses for a successful plaintiff in an inverse condemnation action.

Nor can we discern any rational basis for limiting the allowance of costs in inverse condemnation suits to inverse condemnations of "real property." An inverse condemnation suit involving "personal property" is identical in every respect to an inverse condemnation suit involving real property. The same two-step proceeding must be instituted by the aggrieved personal property owner. He must overcome the same obstacle of first establishing a taking, before he can proceed to proving his just compensation. Because of this, it is clear that an aggrieved personal property owner would have identical legal costs in vindicating his property rights as an owner of real property. Therefore, we cannot agree with

91st Cong., 2d Sess. (1970), *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 5850, 5874–75.]

4. In supplemental briefs filed in this case, defendant conceded that § 306 of the Uniform Relocation Assistance and Real Property Ac-

quisition Policies Act of 1970, Pub.L. 91–646, 84 Stat. 1907, did not present a separate defense to plaintiffs' claim. See also *Drakes Bay Land Co. v. United States*, 459 F.2d 504, 512, 198 Ct.Cl. 506, 521–522 (1972).

defendant that Congress intended in section 4654(c) to treat identically situated property owners so disparately.

Accordingly, for the foregoing reasons, we hold that plaintiffs are entitled under 42 U.S.C. § 4654(c) to recovery of litigation expenses in a successful inverse condemnation action for the taking by a federal agency of their personal property. In accordance with the opinion of this court in *Pete v. The United States*, entered herein on March 17, 1976, and the stipulations of the parties, judgment is entered for the plaintiffs in the sum of $153,000 as just compensation for the taking of their barges and in accordance with the foregoing opinion judgment is entered for the plaintiffs in the sum of $31,293.79 for litigation expenses making a total of $184,293.79. In addition, plaintiffs shall recover a sum computed at the rate of six percent (6%) per annum on the $153,000 from the date of taking (January 19, 1966) until the date of payment as a part of just compensation.