CLOVERPORT SAND &
GRAVEL CO., INC.

v.

The UNITED STATES.

No. 344–77.

United States Claims Court.

June 2, 1986.

Donald F. Mintmire, Louisville, Ky., for plaintiff. John E. Evans, Louisville, Ky., of counsel.

Sylvia Sepulveda-Hambor, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, for defendant.

## ORDER

YOCK, Judge.

The plaintiff, Cloverport Sand & Gravel Co., Inc., has timely filed an application and supplementary affidavit for litigation fees and expenses, under the Uniform Relocation Act, 42 U.S.C. § 4654(c) (1982), in the amount of $104,641.21. The Government has opposed much of the plaintiff's application, and seeks to limit the plaintiff's fee and expense recovery to some $10,729.63.

On June 17, 1977, the plaintiff filed this inverse condemnation action in the United States Court of Claims, seeking just compensation for the diminution in the fair market value of its sand and gravel opera-

tion/property located in Cloverport, Kentucky. On February 8, 1979, the plaintiff filed a motion for summary judgment on the issue of liability. While the Government initially opposed the plaintiff's motion, on October 29, 1979, the day before oral argument was to take place on such motion, the Government contacted the plaintiff's counsel and indicated that it would stipulate to liability. With the liability issue thus decided, the Court of Claims remanded the matter back to its trial division for trial on the damage issue. Thereafter, a five-day trial on the damage issue was conducted in Louisville, Kentucky, on March 22–26, 1982, after which this Court awarded the plaintiff $9,190, plus interest, as compensation for the partial taking of its property. *Cloverport Sand & Gravel Co., Inc. v. United States*, 6 Cl.Ct. 178, 203 (1984).

The Uniform Relocation Act, 42 U.S.C. § 4654(c) (1982), provides that:

The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of [T]itle 28, awarding compensation for the taking of property by a Federal agency, or the Attorney General effecting a settlement of any such proceeding, *shall determine and award or allow* to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his *reasonable* costs, disbursements, and expenses, including *reasonable* attorney, appraisal, and engineering fees, actually incurred because of such proceeding. [Emphasis supplied.]

Further, the legislative history indicates that "[s]ection 304 [section 4654] would authorize the reimbursement of [sic] owner of any right, or title to, or interest in real property for reasonable expenses of litigation, including legal, appraisal and engineering fees, actually incurred because of the taking of real property by Federal agencies, where * * * a property owner brings an action in the nature of inverse condemnation and obtains an award of compensation." H.R.Rep. No. 91–1656,

91st Cong., 2d Sess. 25, *reprinted in*, 1970 U.S.Code Cong. & Ad.News 5850, 5874–75. *See also Pete v. United States*, 215 Ct.Cl. 377, 569 F.2d 565 (1978); *Emeny v. United States*, 208 Ct.Cl. 522, 526 F.2d 1121 (1975); *Drakes Bay Land Co. v. United States*, 198 Ct.Cl. 506, 459 F.2d 504 (1972); *Florida Rock Industries, Inc. v. United States*, 9 Cl.Ct. 285 (1985), *rev'd on other grounds*, 791 F.2d 893 (Fed.Cir.1986); *Branning v. United States*, 7 Cl.Ct. 777 (1985), *aff'd* 784 F.2d 361 (Fed.Cir.1986); *Foster v. United States*, 3 Cl.Ct. 738 (1983), *aff'd*, 746 F.2d 1491 (Fed.Cir.1984).

In *Foster v. United States, supra*, 3 Cl.Ct. at 740 n. 7, citing *Cherokee Nation v. United States*, 174 Ct.Cl. 131, 355 F.2d 945 (1966), this Court listed thirteen factors as criteria generally to be considered in awarding fees and expenses for attorneys. Among these thirteen factors were:

(1) The nature of the undertaking and the character of the services required.

(2) The responsibility assumed.

(3) The magnitude and importance of the case.

(4) The novelty and difficulty of the questions involved.

(5) The results accomplished and the benefits flowing to the clients.

However, the *Foster* Court went on to hold that:

Of primary importance, however, is a consideration of the number of hours reasonably expended, and the hourly rate that is reasonable and customary in the community for the type of work involved.

*Foster v. United States, supra*, 3 Cl.Ct. at 740. *See also Hensley v. Eckerhart*, 461 U.S. 424, 432–34, 103 S.Ct. 1933, 1938–39, 76 L.Ed.2d 40 (1983). With that focus in mind, the Court will review the plaintiff's application and the defendant's opposition thereto.

A. Litigation Fees and Expenses

1. Litigation fees and expenses from June 17, 1977 through March 2, 1982.

During the period June 17, 1977, through March 2, 1982, the plaintiff seeks an estimated $17,500 for attorneys' fees and an estimated $4,000 for expenses. The plaintiff has been forced to estimate these amounts, since its attorneys lost their billing records for this period of time during the relocation of their law offices in 1981 and 1982. The plaintiff has attached the affidavit of Mr. Donald F. Mintmire, the principal and responsible attorney for the prosecution of this case, which attests to the accuracy of the plaintiff's estimates. In addition, plaintiff's counsel states that up through March 2, 1982, not less than 250 hours of professional services were devoted in connection with this case and not less than $4,000.00 in costs were expended. Further, the plaintiff has attached a copy of a general ledger to its application which purports to be the law firm's accounting ledger in regard to the Cloverport Sand & Gravel Co., Inc., as client. The ledger indicates charges and credits in the unnumbered account from July 6, 1976 through March 1, 1982. Finally, the plaintiff has attached a pleading index which purports to show the various pleadings and papers documented in this case from June 17, 1977 through March 2, 1982.

The above-discussed information makes up the entire documentation submitted to this Court by the plaintiff for the purposes of determining reasonable attorneys' fees and expenses to be awarded for the period of June 17, 1977 through March 2, 1982. Not surprisingly, the Government argues that this documentation is inadequate, and thus the Court should deny any fees and expenses based on this inadequate presentation. Government counsel points to *Hensley v. Eckerhart, supra,* 461 U.S. at 433, 103 S.Ct. at 1939 where Justice Powell speaking for the Supreme Court said:

The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

and again at 437 stated, 103 S.Ct. at 1941:

A request for attorney's fees should not result in a second major litigation.

Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise "billing judgment" with respect to hours worked, see *supra,* at 434 [103 S.Ct. at 1939–40], and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.

In addition, Chief Justice Burger, in a concurring opinion, stated at 440–41, 103 S.Ct. at 1943:

I read the Court's opinion as requiring that when a lawyer seeks to have his adversary pay the fees of the prevailing party, the lawyer must provide detailed records of the time and services for which fees are sought. It would be inconceivable that the prevailing party should not be required to establish at least as much to support a claim under 42 U.S.C. § 1988 as a lawyer would be required to show if his own client challenged the fees. A district judge may not, in my view, authorize the payment of attorney's fees unless the attorney involved has established by clear and convincing evidence the time and effort claimed and shown that the time expended was necessary to achieve the results obtained.

*See also Branning v. United States, supra,* 7 Cl.Ct. at 780.

The Government also points out several matters which add considerable factual weight to this argument. First, Government counsel points to the general accounting ledger and argues that the ledger is unnumbered and could very well include all the legal fees and expenses that Cloverport owes to the law firm, regardless of whether they were incurred on the case at issue or not. Cloverport may have been a client of the law firm for matters other than simply this case. The plaintiff provides no answer on this point. Second, the Govern-

ment points out that the ledger begins with entries dated July 6, 1976, whereas the petition (now complaint) in the matter here at issue was filed on June 17, 1977, some one year after the first entries. Third, the ledger only includes figures and does not tell the Court anything about who did the work, or for what reason the figure appears. All of these points are quite true and troublesome for this Court.

In addition to the problems with the ledger, however, the index of pleadings does not create the impression that some $21,500 was expended in legal effort between June 17, 1977 and March 2, 1982. The trial and the bulk of the briefing effort was expended between March 3, 1982 through October 9, 1984. If one excludes the motions for time enlargements and suspensions, the significant effort expended appears to come down to the filing of the petition, the filing of the summary judgment motion on liability, and the filing of the pretrial liability submissions. Although these matters are not inconsiderable, this case is not so unique that one would expect competent counsel to go to Herculean effort in these matters.

Finally, of course, is the question of who should bear the risk of loss when appropriate and necessary documentary records are lost. Should the Government have to bear the risk of loss when they had nothing to do with the loss? Or should the risk of loss be placed on the entity that had possession and custody of the records and knew that these records were necessary to present a claim in a court of law? Clearly, the burden for lost records has to be borne by the party that lost them and the party that bears the burden of showing the reasonableness of their legal actions to a court. In short, plaintiff can recover its fees and expenses only to the extent that it can show evidence of reasonable fees and expenses. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Without the primary records, the vast majority of its application must fail.

Although most of the plaintiff's application for fees and expenses for the time period of June 17, 1977 through March 2, 1982, will be denied, the Court is mindful that "some" effort was expended by the plaintiffs in filing the petition, filing the summary judgment motions, and filing the pretrial liability submissions prior to March 2, 1982. What constitutes reasonable efforts cannot, under the circumstances, be defined with much precision. However, in the exercise of this Court's discretionary judgment, it will allow the plaintiff $2,500 for fees and $500 for expenses incurred during that timeframe for a total fees and expenses award of $3,000. This corresponds roughly to approximately 35 hours at $70 per hour (firm average) plus the expenses allowed. The Court considers this amount to be reasonable under the circumstances. Hopefully, the plaintiff will not lose its essential records next time.

2. Litigation fees and expenses from March 3, 1982 through October 9, 1984.

■ Both parties concede that the bulk of the work in this matter came during this period of time. The pretrial conference was held in Washington, D.C., on March 9, 1982, the five-day trial was held in Louisville, Kentucky, the week of March 22–26, 1982, the post-trial briefing was conducted thereafter, with the Court's opinion being issued on August 7, 1984. Finally, on October 9, 1984, the plaintiff submitted its application for attorneys' fees and expenses.

During this billing period, the plaintiff seeks reimbursement for some 1,111.1 hours of attorneys' fees, or $74,296.50, and $5,900.92 for costs.[1] Although the Govern-

---

1. In contrast to the former subsection discussion (subsection 1), the plaintiff has not lost the original records on which this part of the claim is based. In its application of October 9, 1984, the plaintiff attaches a computer printout of some 20 pages which indicates the professional services rendered and costs, broken down by date, description of service/cost, attorney, and hours. The plaintiff also asserts by affidavit that the time and costs were incurred in connection with this case, are accurate, reasonable, and represent the cost of comparable services rendered by counsel to other clients. It would have been very helpful to the Court if the plain-

ment conceded that most of the 1,111.1 hours sought by the plaintiff were reasonable, it has argued against this Court granting the plaintiff all of its claimed reimbursement, since it alleges that 10 percent of the total number of hours resulted from duplication of efforts and since the plaintiff's attorneys' hourly billing rates themselves were unreasonable.

In regard to the duplication point, the Government focuses on the fact that two plaintiff attorneys were present for three of the five days at trial, and that some fourteen attorneys and clerks worked on this case during the pendency of this action. The Court agrees with the Government's point in regard to the fourteen attorneys, but does not agree as to the two attorneys at trial.

There is no question, of course, that having two attorneys at trial (partners, no less) is, to some degree, redundant. Nevertheless, when one focuses on the facts in this case, the Court does not believe that it should penalize the plaintiff for having two attorneys at the trial. Mr. Mintmire was the senior attorney (and law firm partner) in this case, but had operated in many ways like a "chairman of the board." He delegated virtually all of the legal work to subordinates with the exception of the trial itself. His total time in the case was some 86 hours. Mr. John Evans, however, was the attorney (partner) who had the laboring oar. He billed some 507 hours in this case and clearly was the lead attorney. It certainly was appropriate to have Mr. Evans in court in view of his overall generalship of this case. In fact, Mr. Evans was in court for three of the five days of trial. Nevertheless, it is not inappropriate for a client to have his choice of his personal attorney in court as lead counsel. And Mr. Mintmire was the client's choice to try the case. A client has the right to insist on this and the court will not second guess that choice. *See Branning v. United States, supra,* 7 Cl.Ct. at 783. In any

event, having two attorneys present during the trial of a case is not all that unusual.

The Government's other point on the duplication of effort is, however, more troubling. The firm had some fourteen individuals working on this case. The Government is making the point that the sheer number of people working on this relatively uncomplicated case is an indication of duplication of effort. Although it is somewhat difficult to quantify, the Court agrees with the Government's point. This case was a garden-variety taking case. It simply was not too complicated to present. The Government stipulated to the liability, and the plaintiff presented only three witnesses in their damage case. Two of the witnesses were the owners of the plaintiff company (past and present) and only one witness was outside the company as an expert real estate appraiser. To have fourteen people working on a relatively simple case such as this, was, in this Court's judgment, excessive and did involve some unnecessary duplication of effort. Consequently, the Court will utilize the Government's suggestion and reduce the plaintiff's application for fees during this period by 10 percent.

The Government's third point, *i.e.*, that the plaintiff's billing rates were unreasonable and thus should be reduced, also needs some discussion. Although this Court does not agree with the Government that the rates charged in this case should conform to the state-wide 1983 Kentucky Bar Association rate survey, it does believe that the rates should compare with those rates charged by other similarly situated firms in Louisville, Kentucky, for like business. In responding to the Government's argument, the plaintiff's supplemental affidavit filed July 8, 1985, at the Court's order, stated that:

> [T]he Louisville office of Barnett & Alagia has approximately thirty-five (35) attorneys. There are four or five other firms of comparable size in Louisville

tiff had also attached a summary sheet to the computer printout listing the various types of services and costs by categories. In any event,

the raw data was sufficient, with considerable effort, to allow the Court to assess the reasonableness of the changes for this period of time.

and based on information we receive from the marketplace we are of the opinion that our customary charges are comparable to or less than the other firms of comparable or larger size in the Louisville, Kentucky market. This statement is not inconsistent with the survey attached as an exhibit to Counsel for Defendant Memorandum in Opposition to Plaintiff's Application for Attorneys' Fees and Costs. A careful study of that survey reflects that ten percent (10%) of the respondents in that survey charge an average hourly rate of Seventy-six Dollars ($76) to Ninety-nine Dollars ($99), and five percent (5%) charged average hourly rates of One Hundred Dollars ($100) to One Hundred Twenty-four Dollars ($124) per hour. Based upon the size of our law firm, the rates sought herein are consistent with those statistical categories into which we believe the law firms fall which are our size in the Louisville, Kentucky market.

In this connection, it is noted that the attorneys in this case were billing marginally more for this case than they were charging other clients in the Louisville, Kentucky, area. For example, Mr. Mintmire charged $125.00 per hour for 86 hours in this case, whereas he was charging other clients between $60 to $135.00 per hour for an average hourly rate of some $99.82. Similarly, Mr. John Evans was charging $95.00 in this case, whereas he was charging other clients between $75.00 and $110.00 per hour with an average rate of $85.31 per hour. Likewise, Mr. John Watkins, an associate with the law firm, was charging $55.00 per hour in this case, whereas the average rate for all clients ran to some $46.84.

This marginal increase in rates charged by the plaintiff's law firm in connection with this case further supports the Court's view that the plaintiff's application for fees should be reduced by the 10 percent factor suggested by the Government.

Accordingly, and for all of the reasons discussed, the plaintiff's application for $74,296.50 in fees that were charged during the March 3, 1982 through October 9, 1984 timeframe will be reduced by 10 percent to $66,866.85. The Court believes this figure represents the reasonable fees necessary to present this case during this timeframe.

■ In addition to litigation fees, the plaintiff is seeking $5,900.92 as reimbursement for its out-of-pocket expenses and disbursements during the period March 3, 1982, through October 9, 1984. While the Government argues that the plaintiff's documentation of these expenses lacks specificity, this Court must disagree. The plaintiff's documentation clearly indicates the reasons for these expenses and disbursements, i.e., deposition charges, air fare for the plaintiff's attorneys, lodging for the plaintiff's attorneys, transcript charges, expert witness fees, Lexis research, duplicating costs, long distance telephone charges, postage charges, and delivery charges. The Court does not believe that any further specificity is necessary.[2] Moreover, the Court has noted that the Government has failed to object to any of the particular itemized costs as being excessive, unreasonable, or incurred in a legal matter other than the instant case. Therefore, this Court finds that the plaintiff is entitled to recover $5,900.92 as reasonable reimbursement for its out-of-pocket expenses and disbursements during the period March 3, 1982, through October 9, 1984.

3. Litigation fees and expenses from October 10, 1984, through August 2, 1985.

■ Here, the plaintiff seeks to recover $3,334.79 as reimbursement for its attorneys' fees and expenses incurred in preparing the papers filed in support of its application for attorneys' fees. Although the plaintiff's right to request these fees and expenses is established, see *Emeny v.*

---

**2.** Again, however, it would have been helpful if the plaintiff had used a recapitulation or summary sheet of the expenses rather than forcing the Court to proceed through the entire 20 page computer printout to segregate the various expenses into categories for appropriate assessment as to their reasonableness.

*United States*, 208 Ct.Cl. 522, 532, 526 F.2d 1121, 1127 (1975), after carefully considering the statutory requirement that a plaintiff is only entitled to recover its *reasonable* litigation fees and expenses, this Court has decided to award the plaintiff only $1,000 as reasonable reimbursement for these expenses and services. Allowing $1,000.00 reimburses the plaintiff for its expenses of $369.79, plus gives it some 9 hours worth of fees computed at $70 per hour (firm average), which this Court views as reasonable under the circumstances. In determining that the plaintiff's claim is unreasonable in part, the Court has noted that during this period of time the plaintiff's attorneys prepared only a short reply to the Government's brief in opposition to the plaintiff's October 9, 1984, application for attorneys' fees and expenses, attended a brief hearing called by the Court in connection with its application, and prepared a supplementary affidavit requested by the Court that served to correct the shortcomings in the plaintiff's original application and reply. Accordingly, in view of the work performed and the reasons why the work had to be performed, this Court finds that $1,000 represents reasonable reimbursement for the fees and expenses for this period of time.

## B. Summary

In awarding the plaintiff $76,767.77 as reimbursement for its reasonable fees and expenses, this Court is cognizant of the disparity between this amount and the Court's award of $9,190, plus interest, as compensation for the Government's partial taking of the plaintiff's property. Since the Uniform Relocation Act mandates the award of reasonable attorneys' fees and expenses in the event this Court finds the Government liable for a taking of private property, and awards compensation for the taking, the Court has no alternative but to award the plaintiff an amount sufficient to cover the plaintiff's reasonable attorneys' fees and expenses.

In this case, the Government stipulated to liability. The only remaining matter to be decided was the amount of damages the plaintiff was to recover. Since the Court ultimately decided that the plaintiff was due some $9,190, plus interest, as compensation for the Government's stipulated partial taking of the plaintiff's property, the Uniform Relocation Act applied at that point and mandated the award of reasonable attorneys' fees and expenses, even though there has been limited success on the merits and certainly not the results reached that the plaintiff had contemplated. Plaintiff had, of course, requested some $200,000 in its petition and later pleadings before the Court. Nevertheless, the Court's sole area of discretion under the Uniform Relocation Act is a factual assessment of whether the amount claimed by the plaintiff as reimbursement is reasonable under the circumstances. Here, after considering the factors discussed in *Foster v. United States*, 3 Cl.Ct. 738 (1983), which cites to Court of Claims precedent, this Court has reached the conclusion that, with the exceptions noted herein, the plaintiff is entitled to $76,767.77 as reasonable reimbursement for its attorneys' fees and expenses.

In this Court's judgment, this case represents a clear example of the potential for *de minimis* liability awards in taking cases, accompanied by disproportionate and substantial awards of attorneys' fees. Once the Government stipulates to liability, as it did in this case, then it should be well aware and cognizant that it will be liable, in addition to any damages in compensation, for all reasonable attorneys' fees and expenses incurred by the plaintiff. Accordingly, the Government should carefully assess each case brought under section 1346(a)(2) or 1491 of Title 28, for the Government's taking of private property, both as to the Government's potential monetary exposure for liability and for its potential exposure as to attorneys' fees and expenses. In addition, Congress may wish to revisit the taking/attorneys' fees provision of the Uniform Relocation Act, 42 U.S.C. § 4654(c) (1982). Since Congress has recently repassed the Equal Access to Justice Act ("EAJA"), Pub.L. No. 99–80, 99

Stat. 183–187 (to be codified as amended at 5 U.S.C. § 504 and 28 U.S.C. § 2412 (1985)), there would appear to be less currently for the Uniform Relocation Act attorneys' fees and expenses provision.

## CONCLUSION

On the basis of this Court's conclusions in its Opinion of August 7, 1984, and in this order:

IT IS ORDERED that (1) judgment shall be entered for the plaintiff in the amount of $9,190, as compensation for the partial taking of its property on September 5, 1971. The plaintiff is also entitled to receive simple interest on this amount from the date of taking until the date of payment by the Government, at a rate of 7.5 percent per annum from September 5, 1971, through December 31, 1975, and at a rate of 8.5 percent per annum from January 1, 1976 through December 31, 1979. For the period from January 1, 1980 until the date of payment by the Government, interest shall be calculated by the Secretary of the Treasury in accordance with the method established by Pub.L. No. 92–41.

(2) In addition, judgment shall include $76,767.77 as compensation for the plaintiff's reasonable costs, disbursements and expenses including attorneys' fees, pursuant to the authority of the Uniform Relocation Act, 42 U.S.C. § 4654(c) (1982). No further costs shall be allowed.

(3) Payment of the aforesaid judgment shall be conditioned upon the receipt by the United States of America of a warranty deed of easement properly executed by the plaintiff as outlined in the Joint Motion filed August 2, 1985 with this Court.

IT IS SO ORDERED.