Carl and Mary **SHELDEN**, Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 164–88L.

United States Claims Court.

June 24, 1992.

Brenda Grantland, with whom was Marya C. Young, Washington, D.C., for plaintiffs.

David F. Shuey, U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

LOREN A. SMITH, Chief Judge.

This case comes before the court on defendant's motion for relief from this court's opinion of January 12, 1990. *Shelden v. United States*, 19 Cl.Ct. 247 (1990). In that opinion, the court held that the government's action of filing a *lis pendens* on the subject property as a consequence of the indictment of the mortgagors under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (RICO), had resulted in a compensable taking because it prevented the innocent plaintiffs from foreclosing on the property when the mortgagors defaulted on their loan. Defendant's motion for relief attacks the underlying premise of this conclusion. Defendant contends that plaintiffs never perfected their right to foreclose and that, therefore, the government's action of filing the *lis pendens* did not result in a taking.

In order for the court to find a Fifth Amendment taking that would require just compensation, plaintiffs must have suffered actual damages. If plaintiffs did not have the right to foreclose on their property, they did not suffer actual damages as a result of the government's actions. The court finds that the Sheldens were never prevented from foreclosing on their property by any action of the federal government. Therefore, the government's action, filing the *lis pendens*, did not prevent the foreclosure sale. Rather, the Sheldens' waiving of their right to foreclose in April 1984 and the mortgagors' timely curing of their

default within the time allowed by the plaintiffs prevented the sale at the time in question. Later, the mortgagors' declaration of bankruptcy delayed by several months a foreclosure sale. Thus, the government's actions did not result in a taking.

In light of the facts raised in the government's motion, the court allowed plaintiffs to argue new theories of liability. Plaintiffs argued that the government violated the RICO Act by failing to promptly dispose of the property at issue and that their right to foreclose on the property was "taken" by the government when the property was declared forfeited under RICO. The court finds that a violation of a statute such as that alleged by plaintiffs would constitute a tort, over which this court does not possess jurisdiction. In addition, there is no evidence in light of the new facts that plaintiffs attempted to foreclose on their property and were prevented from doing so by the government. Therefore, there can be no showing that plaintiffs' property right to foreclose was taken or even affected by government action.

For the reasons set forth below, the court grants the government's motion for relief. The court's January 1990 opinion is vacated and the court must dismiss plaintiffs' claim. While this may be a sad result for the plaintiffs who have undoubtedly suffered, they have lost money through no fault of the federal government.

## FACTS AND PROCEDURAL HISTORY[1]

Plaintiffs Carl and Mary Shelden owned real property, the Moraga property, which they sold to Ralph and Freddie Jean Washington. The Sheldens took back a promissory note for a portion of the purchase price. Under the note's terms, the Washingtons were to make monthly payments until June 1986, at which time the balance of the note was to become due. In the event of default or transfer of the property, or any interest therein, the Sheldens, as

---

1. For a complete statement of the facts of this case, see the court's opinion at 19 Cl.Ct. 247 (1990).

beneficiaries, had the option to declare all sums secured immediately due and payable.

On February 15, 1983, the Washingtons were indicted for violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (RICO). The Moraga property was subject to forfeiture under RICO. On March 7, 1983, the property was conveyed to the district court by deed of trust with power of sale. Shortly thereafter, the Washingtons defaulted on their mortgage payments to the Sheldens. On October 7, 1983, the Shelden's trustee filed a notice of default and election to sell the Moraga property. On November 29, 1983, the government and the court were notified that the Moraga property was to be sold at a foreclosure sale in January 1984.

Ralph Washington was found guilty on twelve counts of the indictment on December 1, 1983; the Moraga property was declared to be forfeited. On December 9, 1983, the United States filed a notice of *lis pendens* on the Moraga property. Prior to the date of the January 1984 foreclosure sale, the Washingtons' attorney informed the Sheldens that their trustees had improperly recorded the notice of default. The notice of default was re-recorded and the foreclosure sale was postponed until April 10, 1984.[2]

On January 31, 1984, the district court entered an order which provided that the Washingtons' interest in the Moraga property was forfeited to the United States pending appeal but that Ralph Washington was entitled to remain in physical possession of the house. The Washingtons continued to occupy the Moraga property. During this time, the hill upon which the house was located eroded severely, and, as a consequence, the market value of the house declined significantly. The erosion could have been halted with an expenditure of approximately $10,000 in preventive maintenance.

In an attempt to prevent the Sheldens' scheduled foreclosure in April 1984, the United States and the Washingtons sought to intervene through the court which had presided over the RICO proceedings. On April 9, 1984, that court mediated a stipulated postponement of sale, with the caveat that the court did not have jurisdiction over the matter and *could not* prevent the Sheldens from foreclosing on the Moraga property. The parties agreed to postpone the sale until May 15, 1984. However, the May 1984 foreclosure was avoided because the Washingtons paid what was then currently due on their debt to the Sheldens. The United States did not dispose of the Moraga property and, through 1986, delegated ownership rights and management duties to the Washingtons. Sporadic mortgage payments to the Sheldens were made until March 1986. Subsequently, on April 17, 1986, the Sheldens filed a notice of default. The three-month reinstatement period required in California to allow the defaulting party to cure the default elapsed without the default being cured, and a foreclosure sale was noticed for August 20, 1986. Pursuant to the terms of the note, the note became due and payable on June 1, 1986.

August 20, 1986 was also the date on which the United States Court of Appeals for the Ninth Circuit reversed the conviction of Ralph Washington, *United States v. Washington*, 797 F.2d 1461 (9th Cir.1986), which effectively vacated the forfeiture verdict. However, the notice of *lis pendens* was not removed at this time. The foreclosure sale on the property had been set for August 20, 1986; however, a few hours before the sale was to occur, Ralph Washington filed for protection under Chapter 11 of the Bankruptcy Code. The property was placed under the bankruptcy court's jurisdiction, and, as a consequence, the foreclosure sale did not occur at that time.

The Shelden's trustee finally forced a foreclosure sale on February 23, 1987, and the Sheldens bought the Moraga property

2. The parties concede that the original foreclosure notice had been properly recorded and that the Sheldens could have legally foreclosed on the Moraga property in January 1984. However, this mistake is irrelevant to the proceedings at bar because the government was not a party to that mistake. No action by the government prevented the sale in January 1984.

for $115,500. On March 11, 1988, plaintiffs filed a complaint in this court alleging that the government's action of recording a *lis pendens* on the Moraga property in 1983 effected a taking by preventing them from foreclosing on their security interest.[3] Alternatively, plaintiffs alleged a breach of an implied contract. On January 12, 1990, this court concluded that the government's actions amounted to a taking of the Sheldens' property without just compensation, in violation of the Fifth Amendment of the United States Constitution. The court, relying on *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984), concluded that the filing of the *lis pendens* prevented plaintiffs from selling their land and, thus, resulted in a taking of plaintiffs' property. No evidence was presented to the court that plaintiffs could have foreclosed on the property in spite of the *lis pendens*. The court granted plaintiffs' motion for summary judgment as to liability, with damages to be determined at a later date. The court did not address plaintiffs' breach of contract theory.[4]

On August 9, 1990, defendant filed a motion for relief from the court's opinion. Defendant contended for the first time that plaintiffs never perfected their right to foreclose on the property because the Washingtons had been able to cure their default prior to foreclosure, and that, when the Washingtons did not cure their default, the Moraga property came under the bankruptcy court's jurisdiction prior to the foreclosure sale. Therefore, defendant argues, since plaintiffs never possessed a right to sell their property, the government could not have prevented such a sale. Therefore, a taking could not have occurred. Plaintiffs alternatively argue that the government failed to promptly dispose of the property, which resulted in a compensable Fifth Amendment taking, and that plaintiffs' right to foreclose on the property was "taken" when the property was declared forfeited under RICO.

3. Plaintiffs concede that they did not ask the government to remove the *lis pendens* until 1990.

## DISCUSSION

### I. Jurisdiction

█ The government brings its motion for relief under RUSCC 60(b)(2). For jurisdiction to lie under that rule, defendant must show "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Defendant contends that information received during the deposition of Mary Shelden on July 27, 1990 revealed that plaintiffs did not have a right to foreclose on the property until June of 1986, and that, when the plaintiffs were able to foreclose on the property in August 1986, the property was placed within the jurisdiction of the bankruptcy court. Defendant maintains that, although the information was within the knowledge of the plaintiffs, it was not revealed during the briefing of the cross-motions for summary judgment, and did not become known until pre-trial discovery on damages was underway.

Plaintiffs argue that the evidence had been revealed during the briefing of the cross-motions. However, the court noted at oral argument that, regardless of whether this motion would properly fall under RUSCC 60(b)(2), if the government's contentions contained in their motion for relief were true, then those facts would preclude any award of damages to the plaintiff. As the court stated:

> [T]he very damages phase was premised on this taking date. So if, indeed, Defendant is right, it may not matter whether rule 60 would allow a reconsideration.

> Those same facts which would certainly be timely for the damages phase may not allow The Court to find any damages because the damages in this case were premised on when the government's exercise of *lis pendens* barred the Plaintiff from foreclosing. And when the Plaintiff was then permitted to foreclose. And if, in fact, those dates in fact do not

4. The court addresses plaintiffs' breach of contract theory in Section IV of this opinion.

exist, if there was never a point at which the *lis pendens* barred the Plaintiff from foreclosing, and there was never a point at which its removal allowed the Plaintiffs to foreclose; then the damage premise of a taking cannot occur because there is no difference in the property value.

... [E]ven if relief was not granted under rule 60, it still may be mandated by the fact that the damage proceeding, the government could raise that lack of a differential [in the value of the property before and after the government's action].

Transcript at 6–7 (Sept. 7, 1990). The January 1990 opinion clearly was premised on the record before the court that plaintiffs were prevented from foreclosing by the federal government's actions. Regardless of whether the court hears the evidence at this stage, based on a Rule 60(b)(2) motion, or at trial, the result will be the same—the government's actions did not cause plaintiffs to suffer any loss of property and thus plaintiffs are not entitled to damages as a matter of law.

A Rule 60(b) motion must be made within a reasonable time, and, under RUSCC 60(b)(2), within one year after the judgment has been entered. Defendant filed its motion eight months after the January 1990 opinion was issued, and within one month after taking plaintiff's deposition that defendant contends revealed the new evidence. The court finds that defendant's motion is timely.

## II. Plaintiffs' Right to Foreclose

■ In order for there to be a taking in this case, the plaintiffs must prove that they had a right to foreclose on the Moraga property and that the government prevented plaintiffs from exercising this right. In the January 1990 opinion, the court concluded that the plaintiffs would have been able to foreclose but for the government's filing of the notice of *lis pendens*. Defendant's motion for relief shows that the factual predicate for this conclusion is wrong.

Under applicable state law, to provide notice of a foreclosure sale, plaintiffs were required to record a notice of default and to allow the Washingtons to cure their default within three months from the date of that recordation. California Civil Code § 2924. If the statutory period elapses without cure of the default, plaintiffs would then be able to give notice of a foreclosure sale. When the first three-month period came to an end, the Washingtons' attorney convinced plaintiffs that the notice of default they recorded was defective. Plaintiffs then recorded a second notice of default. Prior to the expiration of the second three-month period, plaintiffs agreed to extend the deadline for the Washingtons to cure the default.

The district court held a hearing with the attorney for the Washingtons, the attorney representing the Sheldens, the attorney representing the United States, and the attorney representing TD Service Company. At that hearing, the attorney for the Sheldens—Mr. Sternberg—indicated that the Washingtons' debt to the Sheldens was $32,000 in default, and that payment of that amount was then currently due in order to prevent the note being called. However, the Sheldens agreed to postpone the foreclosure sale to allow the Washingtons to cure their default. The attorney for the Sheldens stated:

> Mr. Sternberg: We would like to notice [the foreclosure sale] forthwith, your honor, because what we could do is agree to notice the sale for 30 days from now or 35 days and then have a status report [addressing whether the Washingtons cured their default] to your honor before we actually hold the sale.

District Court Transcript at 9, April 9, 1984. The court indicated that, if the Washingtons paid what was due, the foreclosure sale would be set aside.

The Washingtons successfully cured the default within the time period, which effectively precluded the plaintiffs' right to foreclose at that time. The filing of the notice of *lis pendens* by the government did not affect these actions. For nearly two years after they cured their default, the Wash-

ingtons made payments to the plaintiffs under the mortgage agreement. Eventually, however, the Washingtons again defaulted and failed to cure within the statutory time period. Before plaintiffs could foreclose, however, the Washingtons declared bankruptcy and the property was seized by the bankruptcy court. The court concludes that, under these facts, the government never prevented the plaintiffs from foreclosing on their property.

Plaintiffs attempt to draw an analogy between this case and the Supreme Court's decision in *Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). In *Armstrong,* materialmen had liens on uncompleted boat hulls and building materials which had been conveyed to the United States by a contractor. The terms of the contract provided for the transfer of title and delivery of all completed and uncompleted work together with all manufacturing materials from the contractor to the United States in the event the contractor defaulted. The contractor defaulted, and the liens were transferred to the United States. In finding a taking, the Court stated that:

> Before transfer these liens were enforceable by attachment against both the hulls and all materials. After transfer to the United States the liens were still valid, but they could not be enforced because of the sovereign immunity of the Government and its property from suit. *The result of this was destruction of all petitioners' property rights under their liens,* although, as we have pointed out, the liens were valid and had compensable value.

*Id.* at 46, 80 S.Ct. at 1567–68 (citation omitted and emphasis added). Plaintiffs assert that the government's filing of the *lis pendens* constituted a taking of their property similar to the taking in *Armstrong. Armstrong,* however, is very different from the facts of this case because in *Armstrong* the court found that plaintiffs' property rights were destroyed by the government's actions. The Court in *Armstrong* found that the petitioners were actually damaged by the government's actions.

The total destruction by the Government of all value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment "taking" and is not a mere "consequential incidence" of a valid regulatory measure.

*Id.* at 48, 80 S.Ct. at 1568–69. In contrast to *Armstrong,* here the government's actions did not cause the plaintiffs' losses. Under state law, plaintiffs had the right to foreclose only if the Washingtons failed to cure. Even if the government's filing of the *lis pendens* could have prevented plaintiffs from foreclosing on their property, the fact that the Washingtons were able to cure their defaults prior to the foreclosure sale leads to the conclusion that the plaintiffs never had the right to foreclose. The one time that the Washingtons did fail to cure their default, the property was seized by the bankruptcy court prior to the actual foreclosure sale. Therefore, the court concludes that the government's action of placing a *lis pendens* on the property did not prevent plaintiffs from foreclosing. In fact, plaintiffs have not shown any evidence in the record which illustrates any damage to their property interest caused by the *lis pendens.* Plaintiffs have not suffered a taking compensable under the Fifth Amendment.

III.  Violation of Procedure under RICO

■  Plaintiffs argue that the government violated RICO by failing to promptly dispose of the Moraga property. The 1970 RICO statute states that:

> Upon conviction of a person under this section, the court shall authorize the Attorney General to seize all property or other interest declared forfeited under this section upon such terms and conditions as the court shall deem proper.... The United States shall dispose of all such property as soon as commercially feasible, making due provisions for the rights of innocent persons.

18 U.S.C. § 1963(c). According to plaintiffs, the government's failure to promptly sell the property violated this statute, and this violation would amount to a taking that would be compensable under the Fifth

Amendment of the Constitution. Plaintiffs allege that RICO imposed a "duty of care" on the defendant with respect to innocent lienholders and that this duty was breached when the government did not dispose of the property "as soon as commercially feasible."

Assuming *arguendo* that there was a violation of the statute, and that the government breached its "duty of care" to innocent persons connected with the property, this court would not have jurisdiction over such a claim because the claim sounds in tort. This court does not possess jurisdiction over tort claims. 28 U.S.C. § 1491 (1982); *Golder v. United States*, 15 Cl.Ct. 513 (1988).

■ Plaintiffs also argue that their right to foreclose on the property was "taken" by the government when the property was declared forfeited under RICO. This argument does not withstand scrutiny under the facts of this case. There is no evidence that the Sheldens attempted to foreclose prior to August 1986 and that any action by the government prevented the Sheldens from foreclosing. Indeed, there is no evidence that the Sheldens desired to foreclose on their property, other than the current representations of counsel. The Sheldens were entitled to receive the mortgage payment under the contract, and they accepted the mortgage payments throughout the time the property was held by the Washingtons. While it cannot be said with certainty that the Sheldens could have foreclosed on their property, the fact that they did not attempt to foreclose on their property, and thus were not prevented from foreclosing by any governmental action, precludes this court from finding that a taking has occurred.

IV. Plaintiffs' Breach of Contract Claim

■ Plaintiffs, in their complaint and their motion for summary judgment, argue

that the government breached an implied contract not to impair the plaintiffs' security interest and not to commit waste during the government's period of control.[5] The court finds that this argument lacks merit. The government never possessed title to or control of the Moraga property, and was not contractually bound to protect the Sheldens' security interest. At most, plaintiffs were entitled to receive the mortgage payments; they received their payments, or waived timely receipt, until mid-1986, at which time the Sheldens sought to foreclose on the property. The government was not contractually bound to any duty greater than that, and thus did not breach any implied contract with the plaintiffs to maintain the property in good repair.[6] Plaintiffs' breach of contract claim, if any, would lie against the Washingtons, who had physical possession and control over the property and with whom the plaintiffs had signed a contract for the property.

## CONCLUSION

Plaintiffs have failed to show any actual damage suffered as a result of the government's action of placing a *lis pendens* on the property. Therefore, there has been no taking by the government that would be compensable under the Fifth Amendment, and just compensation is not due. In addition, the determination of whether a violation of a statutory duty under RICO has occurred is not within the jurisdiction of this court. Accordingly, defendant's motion for relief from this court's opinion of January 12, 1990 is GRANTED. Given that the court has granted the government's motion for relief, the court denies plaintiffs' motion for Rule 11 sanctions against the defendant. The court's January 12, 1990 decision is VACATED, and the government's motion for summary judgment or, in the alternative, to dismiss is GRANTED. The clerk is hereby directed

---

5. Plaintiffs argue that the forfeiture order entered by the district court was, in effect, a consent decree and that it should be enforced as a contract.

6. The court notes that, at oral argument on February 19, 1991, counsel for plaintiffs sought

the court's advice on the status of the original breach of contract claim. The court indicated that it had not yet re-examined the claim, but that, if plaintiffs wished to submit an additional brief on the subject, the brief would be considered. No such brief was filed.

to dismiss the case. The parties shall bear their own costs.

IT IS SO ORDERED.