Carl SHELDEN and Mary Shelden, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 164–88 L.

United States Court of Federal Claims.

July 15, 1998.

Brenda Grantland, Mill Valley, CA, for plaintiffs. Landon Dowdey, Washington, DC, of counsel.

Andrew M. Eschen, Washington, DC, with whom was Lois Schiffer, Assistant Attorney General, United States Department of Justice, Environment and Natural Resources Division, for defendant.

## *OPINION*

SMITH, Chief Judge.

On October 31, 1995, this court determined the proper compensation due plaintiffs for

the taking of their owner-financed second mortgage and a judgment for $200,227.81 was ordered on June 30, 1997 after extensive efforts to reach a compromise settlement on other expense issues to fully compensate plaintiffs. The parties now come before the court to determine the amount of expenses owed to the plaintiffs pursuant to the Uniform Relocation Act, 42 U.S.C. § 4654(c) (1997). For the reasons stated below, this court awards the plaintiffs the sum of $599,-572.45.

## FACTS

The Sheldens filed a complaint in the United States Claims Court on March 11, 1988, alleging that the government's actions constituted an uncompensated taking in violation of the Fifth Amendment. The court initially granted summary judgment in favor of the Sheldens on the issue of liability, finding that the government's actions constituted a taking. *Shelden v. United States*, 19 Cl.Ct. 247, 252 (1990). The government filed a Rule 60(b)(2) motion for relief from the Claims Court decision, alleging that it was not liable under newly discovered facts. After considering the new facts, this court vacated its earlier ruling and granted the government's motion dismissing this case. This court held that there was no compensable taking because the Sheldens failed to show any actual damages from the government's placing a notice of *lis pendens* on the Moraga property. The Sheldens appealed to the Federal Circuit, which reversed this court's decision based on the conclusion that the Sheldens could not enforce the mortgage against the United States after the property was forfeited. *Shelden v. United States*, 7 F.3d 1022, 1028 (Fed.Cir.1993). The Federal Circuit held that the Sheldens' inability to enforce the mortgage, as a result of the government's action, destroyed the value of the mortgage which resulted in a taking of the Sheldens' property interest. Thus, the Federal Circuit remanded the case to the Court of Federal Claims [1] to determine just compensation. *Id.* at 1031. On October 31, 1995, after a trial on

---

1. The name of this court was changed on October 29, 1992, from the United States Claims Court to the United States Court of Federal

Claims by Public Law 102–572, the Federal Courts Administration Act of 1992.

damages, this court issued an opinion in *Shelden v. United States,* 34 Fed.Cl. 355 (1995) setting forth the compensation the Sheldens could receive for the taking of their property and an order was issued declaring the exact amount the Sheldens were to receive in compensation on June 30, 1997. The parties agreed to determine the amount of litigation expenses at a later stage. After extensive briefing, oral argument, and discussion the court now issues its decision on the award of expenses.

## DISCUSSION

The plaintiffs are claiming litigation expenses in excess of $820,000 while the United States argues the award should be limited to the contingency fee agreement which would be one-third of the judgment, or $66,075.15, and further argues that the amount should be reduced by one-third because of duplicate work, inadequate records, etc. Under the Relocation Act, the plaintiffs can only be compensated for fees after the filing of this case in our court which was March 11, 1988.

## I. JURISDICTION

This court rendered the liability decision in this case pursuant to 28 U.S.C. § 1491, awarding compensation for the taking of plaintiffs' property. The issue now before the court is to determine the award to plaintiffs for "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding" under 42 U.S.C. § 4654(c).

## II. PLAINTIFFS CARL AND MARY SHELDEN'S COSTS AND EXPENSES

Plaintiffs are only allowed to recover reasonable fees and expenses incurred after the filing of their case in this court which date was March 11, 1988. As of June 1, 1997, plaintiffs claimed: 1) $15,100.84 in litigation expenses (1994–96) paid by plaintiffs, but not presented at trial; 2) $3,929.35 in litigation expenses incurred, but not presented at trial and not yet paid, and 3) $9,045.80 in interest on litigation expenses of $18,788.27 (1987–94) proven at trial and included in calculation of

the judgment on the merits. Pls'. Statement of Litig. Exp. The total claimed is $28,075.99 in costs and expenses with $6.00 per day interest accruing from June 1, 1997.

This court has previously stated that plaintiffs cannot recover interest on fees spent litigating this case. Also, plaintiffs cannot claim lost work and various meals as part of their litigation costs and expenses. Thus, the court will initially allow recovery of $15,005.98 for plaintiffs' costs claimed here. The court arrived at this figure by subtracting from the $28,075.99 figure, the interest claimed on expenses paid but not presented at trial, which totals $2,876.29, the interest claimed on expenses not yet paid, which totals $550, interest on the expenses included in the judgment, which totals $9,045.80, Mary Shelden's claim of lost work of $512.68, and certain meals of the Sheldens totaling $85.24.

## III. ATTORNEY, APPRAISAL AND ENGINEERING FEES

### A. Contingency Fee Agreement

██ The Uniform Relocation Assistance and Real Property Acquisition Policies Act states that the successful plaintiff in a takings case shall be reimbursed for reasonable costs and fees "including reasonable attorney, appraisal, and engineering fees, *actually incurred* because of such proceeding." § 4654(c) (emphasis added). Defendant contends that because there was a contingency fee agreement between the plaintiffs and their attorneys, the only attorney fees "actually incurred" by the plaintiffs would be the contingency fee percentage as stated in the agreement. Thus, the maximum allowable amount to award to the plaintiffs would be $66,075.17, or one-third of the judgment recovered. Def. Oppos. at 2. Plaintiffs argue that the court should look beyond the contingency fee agreement in awarding reasonable attorney fees and that counsel negotiated a new agreement for the appeal of the case wherein the plaintiffs agreed to look to a statutory fee award or provisions under the Note and Deed of Trust for their fees. Pls. Sur–Reply at 2.

In *Florida Rock Industries, Inc. v. United States,* 9 Cl.Ct. 285 (1985), this court stated

that enhancing attorneys' hours by "a multiplier because of the difficulty of the case, the great success achieved, the risk involved in bringing the lawsuit and the fees awarded in similar cases" would be "appropriate where there is a contingent fee agreement", suggesting that the plaintiffs are limited to recovery of the agreement at least initially. *Id.* at 290. In further support of this suggestion, the court stated that "plaintiff can be reimbursed only for money it has actually spent or that it is obligated to spend." *Id.* The case also addresses the issue of an "understanding" for fees on appeal between a party and their attorney stating that no authority was cited by the plaintiffs holding that such an "understanding" constituted a contract under which the plaintiffs would be obligated to pay. *Id.* at 291. Thus, the court concluded that additional fees under the "understanding" could not be considered fees incurred under the Relocation Act.

An earlier Court of Claims decision, which is binding on this court, *King v. United States,* approved an award for attorneys fees under 42 U.S.C. § 4654(c) which included "a reasonable fee of $1,090.37 for plaintiffs' counsel which conforms to counsel's arrangements with plaintiffs for a 25 percent contingency basis." 504 F.2d 1138, 1143, 205 Ct.Cl. 512 (1974). To that the court added 25 percent of the interest recoverable on the just compensation award. In that case, the court approved what the plaintiffs claimed in reimbursement. They did not themselves decide that plaintiffs could only be reimbursed for attorneys' fees in the amount of the contingency agreement and they did not discuss the issue. Another case from this court that the court finds persuasive refused to measure the reimbursement of attorneys fees under § 4654(c) by the terms of the various contingency fee agreements. *Branning v. United States,* 7 Cl.Ct. 777, 779 (1985). It is to be noted, however, that the contingency fees in this case with different law firms would have been greater than the actual attorneys' fees billed by the hour. The court determined that "the defendant is required to reimburse the plaintiff only for what the court determines to be 'reasonable attorney . . . fees' incurred by the plaintiff in the prosecution of its claim." *Id.*

The Supreme Court has addressed the issue in *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), in the context of another statute, 42 U.S.C. § 1988. The Supreme Court held that a contingency fee agreement could not alone limit the amount of attorneys' fees to be awarded; that it was only one factor to consider and that it did not replace the lodestar method of calculating attorneys fees. The Court pointed out that the statute "contemplates reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff,". 489 U.S. at 93, 109 S.Ct. 939. "[W]here there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee." *Id.* at 94, 109 S.Ct. 939. The Court applied this rational broadly to every situation where attorneys' fees were to be calculated by a court and stated that "[w]e have never suggested that a different approach is to be followed [other than the lodestar method] in cases where the prevailing party and his (or her) attorney have executed a contingent-fee agreement." *Id.*

This court is aware of decisions of other circuits stating that the *Blanchard* decision only applies to statutes such as 42 U.S.C. § 1988 that do not require that the attorney fees be "incurred". *See Marre v. United States,* 38 F.3d 823, 828 (5th Cir.1994) (holding that attorney fees could not be awarded in amount greater than those required under contingency fee agreement under 26 U.S.C. § 7430). The *Marre* decision relied on an Eighth Circuit decision that held that under the Uniform Relocation Act, a party "actually incurs" attorney fees only in the amount owed under a contingency fee agreement. *United States v. 122.00 Acres of Land,* 856 F.2d 56, 58 (8th Cir.1988). It should be noted that this case was decided prior to the Supreme Court decision in *Blanchard* and since then, there has been another decision by the Eighth Circuit that stated in a footnote, "[w]e also point out that a contingency fee contract imposes no automatic ceiling on the amount of attorney's fees a court may award." *Bess v. Bess,* 929 F.2d 1332, 1335 n. 7 (8th Cir.1991) (citing *Blanchard*). The

case involved an award under 18 U.S.C. § 2520(3) which allows recovery of "a reasonable attorney's fee and other litigation costs reasonably incurred."

Furthermore, the Federal Circuit has held that a contractor "incurred" attorney fees and expenses under the Equal Access to Justice Act (EAJA) even though the contractor's insurer was responsible for paying such costs. *Ed. A. Wilson, Inc. v. General Services Administration*, 126 F.3d 1406 (1997). The court stated that an award of attorney fees is not necessarily contingent upon an obligation to pay counsel. "There must be an express or implied agreement, however, that the fee award will be paid to the legal representative." *Id.* at 1409 (citing *Phillips v. General Services Administration*, 924 F.2d 1577 (Fed.Cir.1991)) (holding that a prevailing party was entitled to attorney fees in excess of the $2,500 she was obligated to pay, in light of fee arrangement with her attorney that any additional payment obligation would be contingent upon success and based on a statutory fee award under the EAJA if she prevailed). A recent case by this court, *KMS Fusion, Inc. v. United States*, holding that under EAJA, the "plaintiff's claim to attorneys' fees is limited to reimbursing legal fees actually paid" can be distinguished from the case at hand. 39 Fed.Cl. 593, 605 (1997). In *KMS Fusion*, the fee agreement at issue was a hybrid agreement whereby plaintiff received a 50 percent discount on the hourly rates charged by its attorneys. Only if a $500,000 aggregate recovery was achieved would plaintiff have to pay more under a contingency fee. Since the $500,000 was not achieved, the vast majority of hours were billed at $75 or less which is the statutory cap under EAJA for hourly attorney fees. Thus, the court held that the plaintiff could only recover $75 per hour and was not entitled to a special increase in light of what he was obligated to pay and the statutory cap under EAJA.

This court is convinced that the plaintiffs in this case are not limited to the amount they were obligated to pay in the contingency fee agreement even if there was not a new understanding of the agreement. Assuming there always existed a contingency fee agree-

ment, it is clear that the plaintiffs agreed to turn the attorney fee award over to their attorneys and that the award is justified in light of the success achieved.

Plaintiffs also argue that the negotiated agreement to take the case on appeal included the alternative of looking to the Note and Deed of Trust for the taken property for attorneys fees as opposed to the Relocation Act. The argument is that the United States, standing in the Trustor's shoes, is obligated under the terms of the Note to pay "all sums [ ] expended by Beneficiary or Trustee," in defending any action affecting "the security hereof or the rights or powers" of Trustee. Note or Deed of Trust, Exhibit 1 B. The court has determined that the award under the Relocation Act is the more sound approach to an award of litigation expenses in this case.

### B. Attorneys' Hourly Rates

■ In their Statement of Litigation Expenses, the plaintiffs claim. interest on two of their attorneys' fees. For Mr. Dowdey, the interest claimed is $40.70 per day and for Ms. Grantland, the interest claimed is $62.08 per day. Ms. Young chose to calculate her fees at her current rate. Defendant argues that the plaintiffs cannot recover interest on attorneys' fees or charge for the current rate. Def. Oppos. at. 9, 13. The defendant cites *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), as reaffirming the rule that federal statutes do not permit interest to run on a recovery against the United States unless Congress expressly allows it. Def. Oppos. at 8. The Relocation Act does not expressly grant successful plaintiffs the right to recover interest and as the government points out compound interest is counted into the judgment award. This court agrees that the proper method for calculating attorneys fees is not interest, but it is proper to use current rates as long as they are reasonable. In using the lodestar method to calculate attorney fees, a court simply multiplies the number of hours by a reasonable rate.

Mr. Dowdey claimed the rate of $175 per hour from 1988 to 1993. From 1994 on, he claims the rate of $250 per hour. Mr. Dow-

dey had been practicing law for forty years at the commencement of this case with extensive federal court practice including appearing before the United States Supreme Court. The court finds that $225 per hour is a reasonable rate for Mr. Dowdey.

Ms. Grantland claims an hourly rate of $125 for 1987–88, $150 for 1989, $175 for 1990–91, $200 in 1992, and $250 for 1993 to the present. Ms. Grantland had been practicing law for six years in 1988 and she focuses primarily on forfeiture cases. The court finds that $200 per hour is a reasonable rate for Ms. Grantland.

The court finds Ms. Young's rate of $150 per hour reasonable. She had been practicing law for seven years when her service began in 1990, specializing in criminal and civil litigation in the federal and state trial and appellate courts in the District of Columbia and New York.

## C. Distinct Unsuccessful Claims—Credits

The government argues that the monetary credits given to the United States by prior opinions were separate and distinct claims upon which the plaintiffs were unsuccessful and, therefore, time spent on these issues should not be compensable. This court, however, is not inclined to agree that theses issues were separate and distinct claims. In the words of the Supreme Court, "[w]here a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee.... [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The defendant notes that this court in our opinion vacating judgment for the Sheldens ordered parties to bear their own costs. *Shelden v. United States*, 26 Cl.Ct. 375, 382 (1992). Since this opinion was reversed, plaintiffs can recover those costs. After reversing and remanding the case, the Federal Circuit also mandated that each party bear its own costs. *Shelden v. United States*, 7 F.3d 1022, 1031 (Fed.Cir.1993). This mandate, however, does not add up to significant dollars because these costs only

include the formal costs of witnesses and ordering transcripts. There are no witnesses presented on appeal and the cost of ordering transcripts for an appeal are minimal.

## D. Attorneys' Hours

The defendant argues that no contemporaneous billing records were kept by plaintiffs' attorneys and thus their hours are not reliable; however, plaintiffs' attorneys' computer data entry of their hours was contemporaneous while simultaneously working on the litigation. As far as how the attorneys for plaintiff chose to spend their time preparing for the case, this court is slow to question their successful strategy and finds that generally their entries do not lack specificity.

Mr. Dowdey claims a total of 936.35 hours over the course of nine years. Ms. Grantland claims a total of 1,681.90 hours over ten years. Ms. Young claims 51.8 hours over two years. Given the long and complex history of this case, these amounts are not unreasonable. They work out to about 100 hours per year for Mr. Dowdey and about 170 hours per year for Ms. Grantland.

Multiplying the hourly fee times the number of hours worked, the court awards attorney fees in the amount of **$210,678.75** for Mr. Dowdey, **$336,380** for Ms. Grantland, and **$7,770** for Ms. Young.

## E. Attorney Expenses

The defendant is disputing several expenses that plaintiffs' attorneys are claiming such as meals, movie rentals at hotel, room service charges, and some travel. As to reimbursement for on the road expenses, the court likens the amount of reimbursement due to the government's *per diem* allowance. Accordingly, the attorneys shall be awarded costs for meals, business-related laundry, travel, and hotel not to exceed the *per diem* allowance of $162 per day, which is the *per diem* rate for the San Francisco area.

Mr. Dowdey claims a total of $6,348 in expenses plus interest. After reducing for excess over the per diem, the court finds Mr. Dowdey's recoverable expenses at **$6,190.** Ms. Grantland claims a total of **$3,069.97**

expenses plus interest. The court finds her expenses reasonable and awards her the full amount. Ms. Young does not claim any expenses. As already noted, plaintiffs cannot recover interest on fees spent litigating the case; thus, no interest is added to these expenses.

## III. EXPERT APPRAISAL, ENGINEERING, AND ACCOUNTANT FEES

 Defendant does not contest plaintiffs' right to recover appraisal and engineering fees. Def. Oppos. at 25. Thus, the parties agree as to the payment of Mr. John Pack, engineer, and Mr. Ron Kaminski, appraiser. The United States does take issue with the total amount claimed for Mr. Kaminski claiming a discrepancy between the spreadsheet and the source documentation. *Id.* at 25 n. 21. The government also contends that accountant fees are not recoverable under § 4654(c) and if they are, they should be reduced in this case due to vague descriptions by Mr. Jay R. Liete and because he cannot claim his current rate. As already discussed the parties are to claim their reasonable current rates to accurately calculate the award figure and accountant fees are recoverable along with the other expert fees. The accounting services are hard to distinguish logically from the appraisal services and are necessary in almost all takings cases. The statute does not state that plaintiffs' costs exclusively include only attorney, appraisal, and engineering fees. Accountant fees in this case are reasonable costs of the litigation. The court does not find Mr. Liete's records too vague and finds his hourly rate of $175 and $250 for court appearances reasonable; thus, plaintiffs' are awarded a total of **$23,165** in accounting fees.

As to Mr. Kaminski's charges, plaintiffs claim a total of $1,710.66 in charges. In adding up his statement of fees and costs, the court finds that the amount totals $1,663.42. There are, however, copies of checks made out to Mr. Kaminski in the amount of $1,610.66 and a notation of a check for $100. The court will award $1,610.66, the actual amount of checks shown to have gone to Mr. Kaminski and, thus, reduce plaintiffs' expenses by $100 bringing the amount for the Sheldens' cost and expenses as discussed in section II from $15,005.98 to **$14,905.98**.

The government contests the inclusion of the expense of the government witnesses made available at plaintiffs' depositions in plaintiffs' costs and expenses because the government has already made arrangements to pay such witnesses. Plaintiffs agree if the government has already made arrangements to pay for these witnesses then those costs have already been paid for and will not be included in this award. Thus, plaintiffs award in section II is further reduced by those costs claimed for Messrs. Kropp, Betts, and Puccio at a cost of $2,587.25 bringing their award under that section to **$12,318.73**.

## CONCLUSION

For the foregoing reasons, this court awards plaintiffs a total of **$599,572.45** to reimburse plaintiffs for their reasonable costs incurred during this ten year proceeding.

It is so ORDERED.