**OSPREY PACIFIC CORP., an Oregon Corporation, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–710.

United States Court of Federal Claims.

Feb. 3, 1999.

Gregory W. Byrne, Portland, Oregon, for plaintiff.

John S. Groat, Washington, D.C., with whom was Jeanne E. Davidson, Assistant Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, and Frank W. Hunger, Assistant Attorney General, United States Department of Justice, for defendant. John E. Cornell, Senior Assistant General Counsel, General Services Administration, was of counsel.

## OPINION

SMITH, Chief Judge.

On June 10, 1998, this court determined the proper compensation due plaintiffs for the taking of their boat and spare parts and ordered a judgment for $550,000.00 plus compound interest from the date of the taking. The parties now come before the court to determine the amount of attorney fees due plaintiff under the Uniform Relocation and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. § 4654(c). For the reasons stated below, this court awards the plaintiff attorney fees of 30 percent of the amount previously awarded to the plaintiff.

## FACTS

Osprey Pacific Corp. ("plaintiff") filed a complaint in the Court of Federal Claims on November 19, 1993 alleging that the government's actions in seizing their Navy PT boat constituted an uncompensated taking in violation of the Fifth Amendment. Plaintiff filed a motion for summary judgment and the government responded with a motion to dismiss and a cross-motion for summary judgment. After oral argument, the court denied both of the government's motions from the bench and took plaintiff's motion for summary judgment under advisement. The court issued an unpublished memorandum opinion explaining the court's first impressions following the oral argument with hopes of furthering settlement. Since the parties could not agree to a settlement, the court held a trial in Portland, Oregon. The court then issued an opinion in *Osprey v. United States*, 41 Fed.Cl. 150 (1998), in which it held that defendant was liable for an uncompen-

sated taking of plaintiff's property, and determined damages in the amount of $550,-000.00 with compound interest from the date of the taking, October 3, 1990.

Following the decision plaintiff filed a request for attorney fees. Defendant contested this filing, alleging plaintiff had failed to show the fees were "actually incurred", as required by the URA. Plaintiff then provided evidence of a contingent fee agreement for 30 percent of any damages award, and amended its request to $300,000.00 as an approximation of the contingent fee. Plaintiff's theory was that the original damages award of $550,000.00, when the compound interest was calculated to September 2, 1998, amounted to $984,403.94. 30 percent of that number was calculated to be $295,321, which led plaintiff to claim the $300,000.00 was "a figure more in line with the fee that will be 'actually incurred' by the time plaintiff collects its judgment." *See* Plaintiff's Reply, 2. (Plaintiff's reply was filed on October 13, 1998). The court granted leave for defendant to file a sur-reply, in which defendant argued the contingent fee was not "actually incurred", and asked for denial of plaintiff's request. The parties were unable to settle their dispute, and the court held oral argument on December 10, 1998. At argument, the court made a preliminary ruling from the bench in favor of granting plaintiff's request for fees based upon the contingency agreement, but requested the parties to try to settle in lieu of a court-imposed decision. Settlement was not possible, and the court now issues this opinion.

## DISCUSSION

The issue now before the court is a determination of the award to plaintiff for "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding" under 42 U.S.C. § 4654(c).

This case is reminiscent of another case recently decided by this court, *Shelden v. United States*, 41 Fed.Cl. 347 (1998). In that case, plaintiff requested costs in excess of a contingency fee agreement on the theory

that they had "actually incurred" a higher amount. Defendant argued against awarding anything greater than the contingency agreement, urging that in light of the agreement, the only fees "actually incurred" were the percentage mandated by the agreement itself. It was never questioned in that case that contingent fee agreements could qualify as fees "actually incurred" under the URA.

Here, the government's theory is almost exactly the opposite from *Shelden.* On September 3, 1998, Plaintiff filed a request for attorney fees and expenses under the URA in the amount of $170,000.00. Defendant argued the evidence for these fees, which was less than detailed, was insufficient to show the fees were "actually incurred", a standard required by the URA. Plaintiff's excuse for the vagueness of its original records was that there was a contingency fee agreement which was intended to account for plaintiff's attorney fees. In response to plaintiff's reasoning, defendant noted that plaintiff had not even provided evidence of said contingency agreement. When plaintiff amended its request to $300,000.00, it filed a copy of a May 15, 1991, signed agreement (penned by plaintiff's attorney of record), which stated: "This letter is to confirm that you have retained me to represent Osprey Pacific Corporation and related parties in connection with their claim against the Port of Newport and State of Oregon for breach of the PTF 26 Charter Agreement. I wish to confirm that my fee will be 30 percent of any amount recovered." *See* Plaintiff's Reply, 4. Defendant claims this is insufficient demonstration that plaintiff "actually incurred" fees in the amount of 30 percent of the damages award.

It is true that this court may award less than the contingency agreement declares. *See Branning v. United States,* 7 Cl.Ct. 777, 779 (1985) ("[T]he defendant's obligation to the plaintiff in the matter of reimbursement for attorneys' fees is not to be measured by the terms of the various contingent-fee agreements made by the plaintiff with different law firms."). It is equally true that we may grant contingency fee based awards. *See King v. United States,* 504 F.2d 1138, 1143, 205 Ct.Cl. 512 (1974) (awarding "a rea-

sonable fee of $1,090.37 for plaintiffs' counsel which conforms to counsel's arrangements with plaintiffs for a 25 percent contingency basis."). We may also apply the contingency fee percentage to the interest recoverable on the just compensation award. *See Shelden,* 41 Fed.Cl. at 350; *King,* 504 F.2d at 1143.

In *Branning,* the court declined to award based on contingency agreements because the fees had to be "reasonable attorney... fees". 7 Cl.Ct. at 779. Defendant argues, in light of *Branning,* that a contingency fee agreement standing alone does not constitute a basis for granting attorney fees under the URA. Defendant emphasizes the *Branning* holding that beyond reasonable attorney fees, "any additional financial burden to the plaintiff resulting from private arrangements between the plaintiff and counsel must be borne by the plaintiff." *See Branning,* 7 Cl.Ct. at 779. It would be absurd if the onus on a plaintiff in proving a contingency fee award were "actually incurred" meant proving that the number of hours worked produced a fee exactly equal to the contingency fee percentage itself.

*Branning* does not hold that contingency fee agreements are not "actually incurred", nor that such agreements are insufficient evidence of fees "actually incurred". It simply requires contingent fee agreements to be "reasonable" in order for them to be enforced. *Branning*'s facts, moreover, are distinguishable from the present case inasmuch as there was evidence in *Branning* of three separate contingency fee agreements for one-third of the ultimate recovery each. In accord with both *Shelden* and *Branning,* we hold today that, where there is sufficient evidence that the contingent fee is "reasonable" in light of the complexity and time requirements of the case, a plaintiff may recover attorney fees based on a contingency agreement.

■ Defendant argues that the contingency agreement provided by plaintiff does not cover the present case because it was actually intended to cover litigation in another court. We read the agreement differently. The language "in connection with their claim against the Port of Newport and State of Oregon for breach of the PTF 26 Charter

Agreement" clearly does address a prior action in state court. However, that action was dismissed when the court ruled that the defendants were agents of the United States. It does not follow from the agreement's language that it would fail to cover further litigation covering the same events. Mr. Byrne explained at oral argument that the contingent fee agreement was never amended because it was understood between him and his client that it would continue to apply to the action in the Court of Federal Claims. *See* Tr., 5. There is nothing to contradict this statement. Further, simple logic supports it. Accordingly, the court finds the agreement did cover the suit in the Court of Federal Claims as well as the related suit in state court.

Nevertheless, the defendant argues that because the agreement also covered the prior suit, an award based on the agreement would also compensate plaintiff for attorney's fees incurred in a prior suit, which is not permitted under the URA. The court disagrees with the logic of this argument. Plaintiff lost in state court, and accordingly incurred no legal costs under the contingency fee agreement, which provided for payment only upon a recovery. As the court explained at oral argument, "[T]his is not awarding . . . an attorney's fee based upon any prior litigation because in the prior litigation, Osprey versus the Port of Newport, the contingency fee was paid. It was zero since that did not result in any award. That was a satisfied contingency fee. And then in this case there is an award, it's thirty percent." Tr., 22. Defendant's argument fails to appreciate what a contingent fee is. It is not based upon *any* hours of work, only upon the ultimate result.

█ It remains for the court to determine if the fees "actually incurred" under the contingency fee agreement were "reasonable" fees. The court finds that they were. Based upon the amount of work the court has witnessed that was put into this case, the difficulty of the case, and uncertainty of the substantive law, the court determines that 30 percent of the damages award is a reasonable fee.

Further, the fact that the contingency fee agreement, as defendant argues, may have covered a related state suit without benefit of the URA, suggests to the court that a 30 percent contingency fee agreement was well within the local market's price range for this sort of litigation. The 30 percent rate is also within the range of other fee awards in this court. The contingency fee agreement in *Shelden*, for example, was for one third of the recovery, and the court found that reasonable fees, actually incurred, were greater than that amount. The underlying issues in this case were complex, and necessarily required rigorous efforts of plaintiff's attorney. The court finds the contingency fee agreement provides for "reasonable" attorney's fees, and awards plaintiff 30 percent of the damages awarded in the underlying case.

█ Finally, the court must consider the alleged out-of-pocket costs in plaintiff's fee application. Plaintiff itemizes expenses, separated by day and subject matter, ranging from Federal Express, to copies, to travel, to witness fees, in the amount of $10,563.10. This amount, originally part of the $170,-000.00 claim, is a separate expense not part of the fees incurred under the contingency agreement. The itemization is not so well-documented as it might be—defendant is correct in pointing out that the description of the expenses could be more detailed, and no affidavit was filed. However, the court finds the plaintiff's exhibit credible and sufficiently specific, and concludes that the expenses were actually incurred. *See Cloverport Sand & Gravel Co., Inc. v. United States*, 10 Cl.Ct. 121, 126 (1986) (finding that documentation of expenses with reasons for the expenses provided sufficient specificity under the URA, especially where defendant did not object to any particular items or costs as excessive, unreasonable, or incurred in a different legal matter). The court, having traveled to Portland for the trial of this case, is quite familiar with the expenses of travel and accommodations associated with this case. Further, in light of the length of this litigation and the court's experience with litigation expenses, the court finds that the cost of $10,563.10 for expenses incurred is well within the reasonable range, if not surprisingly low, and awards that amount under the URA.

The court notes that RCFC 81(e)(1) requires attorney fee applications and supporting statements to be under oath. Accordingly, as soon as the court receives a filing which attests under oath to the documentation in the filing for attorney fees, the judgment will become final.

## CONCLUSION

Based on the foregoing, the court awards plaintiff 30 percent of the original just compensation award of $550,000.00, plus 30 percent of the compound interest recovered on the just compensation award, in attorney fees based on plaintiff's contingency fee agreement. The court also awards plaintiff $10,563.10 in reasonable costs, disbursements, and expenses. The court directs the clerk to enter judgment upon filing by plaintiff of an oath attesting to the truth of the attorney fee application and supporting statements.

**IT IS SO ORDERED.**