**Cloide C. BRANNING, d/b/a Pleasant Point Plantation, a Partnership**

v.

**The UNITED STATES;**

**Morgan Guaranty Trust Company of New York, Third-Party Plaintiff.**

No. 400–76.

United States Claims Court.

April 19, 1985.

Paul Martin Wolff, Washington, D.C., for plaintiff. Robert P. Watkins and F. Whitten Peters, of counsel.

Joseph R. Bankoff, Atlanta, Ga., for third-party plaintiff Morgan Guaranty Trust Co. of New York.

Susan V. Cook, Washington, D.C., for defendant. Richard W. Eddy, Dept. of the Navy, Washington, D.C., of counsel.

## ORDER FOR ENTRY OF JUDGMENT

WHITE, Senior Judge.

The issue of liability in this rather ancient "taking" case was decided in favor of the parties plaintiff by this court's predecessor, the United States Court of Claims, on July 1, 1981 (228 Ct.Cl. 240, 654 F.2d 88). The issue of damages was decided by this court on November 19, 1984 (6 Cl.Ct. 618). In order to dispose of the case finally at the trial level, it is now necessary to pass upon claims submitted by the plaintiff[1] and by a third-party plaintiff, Morgan Guaranty Trust Company of New York

---

1. Although the petition (now termed a complaint under the rules of this court) was filed under the name of Cloide C. Branning, d/b/a Pleasant Point Plantation, a Partnership, the record shows that the actual plaintiff is Pleasant Point Plantation, a partnership consisting of Cloide C. Branning, H. Jack Pendley, Jr., and David M. Pendley.

(Morgan),[2] for reimbursement of expenses, including attorneys' fees, allegedly incurred in the conduct of the litigation.

The pending claims were submitted under 42 U.S.C. § 4654(c) (1982), which provides in pertinent part as follows:

> The court rendering a judgment for the plaintiff in a proceeding brought under section * * * 1491 of Title 28, awarding compensation for the taking of property by a Federal agency, * * * shall determine an award or allow to such plaintiff, as a part of such judgment * *, such sum as will in the opinion of the court * * * reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney * * * fees, actually incurred because of such proceeding.

Morgan and the defendant have filed a stipulation stating that Morgan is entitled to receive a total of $300,000 as reimbursement for litigation expenses, including attorneys' fees, reasonably incurred in the conduct of the litigation. This stipulation is accepted by the court.

The plaintiff and the defendant are in agreement, and have stipulated, that the plaintiff is entitled to receive a total of $195,000 as reimbursement for litigation expenses, other than attorneys' fees, reasonably incurred by the plaintiff in the conduct of the damages phase of the litigation. This stipulation is also accepted by the court.

Thus, there remains for determination the plaintiff's claim for reimbursement with respect to: (1) litigation expenses, including attorneys' fees, incurred during the liability phase of the case; and (2) attorneys' fees incurred during the damages aspect of the litigation. It was agreed by counsel for the plaintiff and for the defendant at a conference held on March 11, 1985, that these matters might be determined by the court on the basis of written submissions by the parties to the court, as supplemented by comments made by counsel at the March 11 conference.

In this connection, one complicating factor is that the plaintiff engaged three different law firms to handle the case during different periods of the litigation: (1) Barnwell & Stevenson, of Charleston, South Carolina; (2) Dowling, Sanders, Dukes, Novit & Svalina, P.A., now Dowling, Sanders, Dukes, Svalina, Ruth & Williams, P.A. (the Dowling firm), of Beaufort, South Carolina, and Hilton Head Island, South Carolina; and (3) Williams & Connolly, of Washington, D.C.

There is nothing in the record to show what the plaintiff's agreement was with Barnwell & Stevenson, except for an indication that the firm took the case on some sort of contingent-fee basis. The Dowling firm and Williams & Connolly also handled the case during their respective periods under contingent-fee arrangements with the plaintiff; and it appears that the plaintiff agreed to pay each of these firms one-third of whatever amount might ultimately be recovered from the Government. It has been estimated that the ultimate recovery will amount to a figure somewhat in excess of $4,000,000.

■ Of course, the defendant's obligation to the plaintiff in the matter of reimbursement for attorneys' fees is not to be measured by the terms of the various contingent-fee agreements made by the plaintiff with different law firms. On the contrary, the defendant is required to reimburse the plaintiff only for what the court determines to be "reasonable attorney * * fees" incurred by the plaintiff in the prosecution of its claim. Any additional financial burden to the plaintiff resulting from private arrangements between the plaintiff and counsel must be borne by the plaintiff.

### Barnwell & Stevenson

The plaintiff initially engaged the law firm of Barnwell & Stevenson to represent it in litigating the plaintiff's taking claim

---

**2.** Morgan is the only third-party plaintiff that participated actively in the conduct of the litigation.

against the United States. The plaintiff now seeks reimbursement in the amount of $23,780, purportedly representing fees for professional legal services rendered by Barnwell & Stevenson in the early stages of the litigation. The $23,780 figure is said to be calculated on the basis of 68 court-room hours at the rate of $125 per hour and 193 other hours at the rate of $80 per hour. (The total would seem to be $23,-940.)

■ Nothing of an evidentiary nature was submitted by the plaintiff in support of this aspect of its claim, with the exception of an unsigned, unsworn document typed on Barnwell & Stevenson stationery, listing many dates and indicating various events as having occurred on the several dates. The vast majority of these notations merely relate to the receipt of papers pertaining to the litigation, or to the forwarding of such papers to other persons. There are references, however, to a couple of conferences with Cloide C. Branning before the petition was filed, to library research on two separate dates, to a conference with attorneys for Morgan and a conference with a representative of the plaintiff and members of the Dowling firm on the same date, and to work having been done over a 2-day period in connection with the drafting of the petition (now complaint), with related research. There are also notations concerning a couple of telephone conferences on different days after the complaint was filed, and to attendance at the trial on liability for 3 days.

The unsigned statement does not show what personnel of Barnwell & Stevenson took part in any of the activities previously outlined, or how much time was devoted by the personnel to such activities, or what role personnel of Barnwell & Stevenson played at the trial on liability, inasmuch as the Dowling firm, before that trial, had assumed the responsibility for representing the plaintiff in the litigation. Moreover, 3 days of attendance at the trial on liability would not account for the 68 courtroom hours, at $125 per hour, included in the

Barnwell & Stevenson portion of the plaintiff's claim.

On the basis of the plaintiff's presentation, the court is not justified in holding that the plaintiff is entitled to receive $23,-780 (or any other specific amount) as reimbursement for a litigation expense actually incurred by the plaintiff in the form of reasonable attorneys' fees while the plaintiff was represented by the Barnwell & Stevenson firm. Accordingly, this item of the plaintiff's claim must be rejected.

### Dowling, Sanders, Dukes, Svalina, Ruth & Williams, P.A.

■ The Dowling firm actually became involved in the case before the complaint was filed on July 1, 1976. Subsequently, not later than March 2, 1978, the Dowling firm assumed the responsibility for the conduct of the litigation on behalf of the plaintiff. By that time, a motion by the defendant for judgment on the pleadings had been denied by the Court of Claims in an order dated November 11, 1977; and the Dowling firm was in charge of conducting, on behalf of the plaintiff, the extensive discovery and the other steps necessary in preparing for a trial on the merits with respect to the issue of liability.

The Dowling firm continued to represent the plaintiff through the trial on the merits, which was held during the October 16–20 period in 1978, the preparation and submission of requested findings of fact and briefs before the trial judge of the Court of Claims, the preparation and submission of briefs for the consideration of the Appellate Division of the Court of Claims, and the presentation of oral argument before the Appellate Division.

The Dowling firm and counsel for Morgan, although opposed by able counsel for the Government, were successful in obtaining a novel victory in the liability phase of the case. Both the trial judge and the Appellate Division of the Court of Claims were persuaded to hold, for the first time in this case, that regular and frequent flights by heavy jet military aircraft through the airspace over an uncongested

area at an altitude of 600 feet above ground level had resulted in the taking by the United States of an avigation easement over subjacent realty, entitling the landowner to just compensation under the Fifth Amendment. It had previously been understood that military aircraft could be operated at will through the airspace above uncongested areas without any resulting liability to the United States, so long as the aircraft maintained an altitude higher than 500 feet above ground level.

The plaintiff's claim for reimbursement of litigation expenses purportedly incurred on the basis of services performed by the Dowling firm was originally in the amount of $339,134.50 for attorneys' fees and $26,-750 for the Dowling firm's expenses. The figure for attorneys' fees was based in part on J. Fred Buzhardt (the leading attorney for the plaintiff until his death in about December 1979) having worked a total of 696.7 hours at an hourly rate of $150 per hour. At a conference that was held on March 11, 1985, a representative of the Dowling firm stated that the amount of time devoted by the late Mr. Buzhardt to this case could not be substantiated with accuracy, as Mr. Buzhardt apparently did not maintain a written record of his time and work. Consequently, the representative of the Dowling firm reduced the amount of the firm's bill to $204,122.50 for attorneys' fees, plus $26,750 in expenses, or a total of $230,872.50.

The submission on behalf of the Dowling firm shows that nine attorneys in the firm (excluding Mr. Buzhardt) worked a total of 2,050 hours on this case, at hourly rates of $125 each for three attorneys, $100 for one attorney, $75 each for four attorneys, and $65 for one attorney. In addition, the data show that three paralegals worked a total of 13.3 hours at an hourly rate of $25 for each paralegal.

An affidavit by a member of the Dowling firm states that the hourly rates charged by the firm in this case represent the hourly rates generally charged in the Beaufort County, South Carolina, area, where the firm is located, by attorneys with qualifications similar to those of members of the Dowling firm who worked on this case.

An itemized statement of expenses incurred by the Dowling firm in connection with its representation of the plaintiff in this case was also submitted.

The defendant did not interpose any objection to the allowance of $230,872.50 for attorneys' fees and other litigation expenses incurred by the plaintiff with respect to the Dowling firm's representation of the plaintiff during the liability aspect of the case.

It is therefore determined that the plaintiff is entitled to be reimbursed in the amount of $230,872.50 for reasonable litigation expenses, including reasonable attorneys' fees, incurred during the liability phase of the litigation.

### Williams & Connolly

█ This firm represented the plaintiff during the damages phase of the case. The plaintiff and the defendant have agreed and stipulated that three of the firm's partners, Paul Martin Wolff, who was the leading attorney for the plaintiff during the damages phase of the case, Robert P. Watkins, and F. Whitten Peters, reasonably devoted a total of 2,450.5 hours of work to this case, that five associates of the firm reasonably devoted a total of 121.8 hours of work to the case, and that paralegals employed by the firm reasonably devoted a total of 72.5 hours to the case. This stipulation is accepted by the court.

There is no agreement between the parties, however, regarding the hourly rates at which the attorneys' fees are calculated. The firm bases its charge in this case on hourly rates of: $230 for Mr. Wolff; $200 for Mr. Watkins; $140 for Mr. Peters; $110 for one associate; $90 for another associate; $100 each for the three other associates; and $50 for each of the paralegals. The total claim for attorneys' fees with respect to the firm of Williams & Connolly amounts to $438,798.

Affidavits submitted by personnel of Williams & Connolly show that the hourly

rates on which the claim for attorneys' fees is based represent the hourly rates charged by the firm and paid by other clients [3] in 1984 for services performed by the various individuals who worked on this case. The defendant did not submit any affidavits or other evidentiary material to oppose, or to question the accuracy of, the affidavits just mentioned. Consequently, the information submitted by the plaintiff on this point must be accepted as correct.

The defendant does object, however, to being required to reimburse the plaintiff for attorneys' fees based on what the defendant characterizes as the "astronomical" hourly rates charged by Washington, D.C., attorneys, when this case arose in Beaufort County, South Carolina, and the trial on damages was held in Savannah, Georgia. The defendant apparently concedes the right of the plaintiff to engage Washington, D.C., counsel to represent the plaintiff during the damages phase of the case, instead of engaging counsel from Beaufort County or from Savannah, but the defendant takes the position that it should not be required to reimburse the plaintiff for attorneys' fees on the basis of hourly rates customarily charged by Washington, D.C., counsel.

The plaintiff was represented with great competency by the Williams & Connolly firm during the extensive and often complicated maneuvering that occurred during the damages phase of this case.

The defendant was again represented by able counsel in the damages phase of the case. It was the defendant's position that the avigation easement taken by the United States in the airspace above the plaintiff's property was restricted to a comparatively narrow strip of the property, and did not extend over the greater part of the 500-acre tract; that the highest and best use of the property—which, according to the Court of Claims' decision on liability, had been for development as a medium-density residential-recreational project before the taking—was unchanged as a result of the taking; and that the diminution (if any) in the fair market value of the property as a result of the taking was not greater than approximately $688,000.

As a result of the material developed and presented by Williams & Connolly for the plaintiff and by counsel for Morgan, the court was persuaded that the avigation easement taken by the United States extended over the entire 500-acre tract involved in the litigation; that the highest and best use of the property was no longer for development as a medium-density residential-recreational project after the taking, but, rather, was for low-density residential development; and that, as a result of the avigation easement taken by the defendant, the fair market value of the property had been diminished to the extent of $2,000,000.

There is no way of knowing, of course, whether the result would have been any less favorable to the plaintiff if it had been represented during the damages phase of the case by counsel from Beaufort County or from Savannah. As this court is a court of national jurisdiction, however, it would not be feasible to adopt the view urged by the defendant in this case that the Government's obligation under 42 U.S.C. § 4654(c) to reimburse a successful plaintiff in a taking case for "reasonable attorney * * * fees" should be determined on the basis of the fees customarily charged by attorneys in the area where the cause of action arose or in the area where the trial is held. The causes of action litigated in this court sometimes arise in a remote area where there is no local bar (e.g., a case involving a contract for the construction of a road, or for the sale of timber, in a national forest located in a remote region of the West), or in an area where the local attorneys, in the estimation of the claimant, lack the experience and expertise which the claimant regards as necessary for the successful prosecution of the claim.

Also, in view of the court's policy to accommodate the convenience of witnesses

---

**3.** Except for nonprofit charitable organizations, clients receiving *pro bono publico* professional legal services, and clients represented pursuant to court appointments.

to the maximum extent that seems to be feasible, it is not uncommon for trial sessions in the same case to be held in two or more different places, as it occasionally happens that different groups of witnesses reside in widely separated locations. It would not be practicable in such a situation to attempt to determine the successful claimant's reimbursement for attorneys' fees on the basis of the customary charges made by attorneys in the different places where the court may have held trial sessions.

 In this court of national jurisdiction, a claimant should be entitled to select any member of the bar of this court in whom the claimant has confidence, irrespective of whether the attorney resides in the locality where the cause of action arose, or in the place where the trial is held, or in some other place. Also, it seems entirely reasonable to hold that, if the claimant is successful in a taking case, the Government's obligation to reimburse the claimant for reasonable attorneys' fees should be based on the fees customarily charged by the particular attorney to other clients for similar services, subject to a possible adjustment upon a showing (which is not involved here) that the attorney's rates are substantially in excess of the rates charged by other similarly qualified attorneys practicing in the same area where the claimant's attorney customarily practices. Of course, a showing of incompetency on the part of an attorney (which is not involved in this case) should necessarily be taken into account. Also, if it should appear (as it does not in this case) that the location of the attorney, in relation to the performance of the necessary duties, resulted in excessive travel or other incidental expenses, this factor should be considered in determining the claimant's reimbursement for reasonable litigation expenses other than attorneys' fees.

On the basis of the material submitted to the court in this case, it is determined that the plaintiff is entitled to reimbursement in the amount of $438,798 for reasonable attorneys' fees actually incurred during the damages phase of the case.

### Barry L. Johnson

 Among the materials submitted on behalf of the plaintiff is a statement by Barry L. Johnson, of Hilton Head Island, South Carolina, detailing the time spent, and the incidental expenses incurred, by Mr. Johnson in connection with this case.

It appears that Mr. Johnson was engaged by Williams & Connolly to assist that firm in locating witnesses and rendering other incidental assistance during the damages phase of the case. Subsequently, Mr. Johnson submitted his bill to Williams & Connolly, which paid the bill to the extent that the firm considered the charges to be appropriate. The amount of the firm's payment to Mr. Johnson has been included in the total of $195,000 which the defendant has agreed to pay the plaintiff as reimbursement for litigation expenses, other than attorneys' fees, incurred during the damages phase of the case.

It appears that Williams & Connolly failed to pay approximately $9,000 of Mr. Johnson's total charges.

As there is no showing that the plaintiff has paid, or is obligated to pay, any additional amount to Mr. Johnson for the services performed by him for Williams & Connolly, there is no basis on which the court could require the United States to reimburse the plaintiff for the amount of approximately $9,000 that Williams & Connolly failed to pay Mr. Johnson.

### Conclusion

On the basis of the court's determination in its decision of November 19, 1984, and in this order:

IT IS ORDERED that judgment shall be entered (1) allowing the plaintiff the sum of $2,000,000, plus an amount equivalent to simple interest on $2,000,000 from January 1, 1975, to the date of payment, computed at the annual rate of 7½ percent for the year 1975, at the annual rate of 8½ percent for the years 1976–79, and, for the years

from January 1, 1980, to the date of payment, at the annual rate established by the Secretary of the Treasury pursuant to Public Law 92–41 (85 Stat. 97), all as part of just compensation for the taking by the United States in January 1975 of an avigation easement in the airspace above the plaintiff's property; (2) allowing the plaintiff, in addition, the sum of $864,670.50 as reimbursement for reasonable costs, disbursements, and expenses, including reasonable attorneys' fees, actually incurred because of such proceeding; and (3) allowing third-party plaintiff Morgan Guaranty Trust Company of New York the sum of $300,000 as reimbursement for reasonable costs, disbursements, and expenses, including reasonable attorneys' fees, actually incurred because of such proceeding.