**Cheryl SWISHER and Galen Swisher, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 98–1352–CM.**

United States District Court, D. Kansas.

April 17, 2003.

Cecilia Fex, James R. Baarda, The Ackerson Group, Chtd., Washington, DC, John T. Conlee, John E. Foulston, Foulston, Conlee, Schmidt & Emerson, LLP, Wichita, KS, Nels J. Ackerson, The Ackerson Group, Chtd., Washington, DC, for Plaintiffs.

Christina L. Medeiros, Kansas City, KS, David Spohr, Seattle, WA, Emily B. Metzger, Wichita, KS, James A. Eichner, Washington, DC, Marc A. Smith, Washington, DC, for Defendants.

Alan L. Rupe, Husch & Eppenberger, LLC, Wichita, KS, Cornish F. Hitchcock, Washington, DC, S. Douglas MacKay, Husch & Eppenberger, LLC, Wichita, KS, for Intervenor Defendant.

John T. Conlee, John E. Foulston, Foulston, Conlee, Schmidt & Emerson, LLP, Wichita, KS.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court are plaintiffs' Petition for Reimbursement of Fees and Costs Under 42 U.S.C. § 4654(c), the Uniform Relocation Assistance and Real Property Acquisition Policies Act (URA) (Doc. 151); plaintiffs' Motion to Reconsider Decision to Exclude Certain Fees (Doc. 163); plaintiffs' Submission of Revised Fees and Costs (Doc. 165) required by the court's March 3, 2003 Memorandum and Order (hereinafter "March 3 order" (Doc. 162)); plaintiffs' Supplemental Submission to their Revised Submission of Fees and Costs (Doc. 166); and defendant's Amended Memorandum in Opposition (Doc. 170). The court denies plaintiffs' Motion to Reconsider, and grants in part and denies in part Plaintiffs' Petition for Reimbursement of Fees and Costs as set forth below.

● **Applied Law**

■ First, the court must determine whether it is proper to apply the law of the Federal Circuit or Tenth Circuit Court of Appeals. As the court noted in its March 3 order, the United States Court of Appeals for the Federal Circuit maintains exclusive appellate jurisdiction over this action, because plaintiffs' claim is brought under the Tucker Act, 28 U.S.C. § 1346. 28 U.S.C. § 1295(a)(2). When reviewing "questions on appeal involving substantive matters not exclusively assigned to the Federal Circuit," the court's "general practice is to apply to related procedural issues the appropriate regional circuit law."

*Chrysler Motors Corp. v. Auto Body Panels of Ohio,* 908 F.2d 951, 953 (Fed.Cir. 1990). When the question on appeal involves "substantive matters unique to the Federal Circuit," the court applies Federal Circuit law to "related procedural issues." *Id.* at 953; *see also Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 857 (Fed.Cir.1991) (noting the court has "cautioned that our deference to regional circuit law in the interest of uniformity was not applicable when we would be called upon to resolve either procedural or substantive matters that were essential to the exercise of our exclusive statutory jurisdiction"). In accordance with this principle, the Federal Circuit applies its own law, rather than that of the regional circuit, to the merits of an appeal from a district court Tucker Act decision. *United States v. One 1979 Cadillac Coupe De Ville,* 833 F.2d 994, 997–98 (Fed.Cir.1987).

Whether the Federal Circuit would defer to regional circuit law regarding the pending Motion to Reconsider and Petition for Fees and Costs is less clear. In *Biodex,* the Federal Circuit applied its own law to an appeal concerning the reviewability of a jury's factual findings made in a patent trial in the absence of a postverdict motion. 946 F.2d at 858–59. In making this choice of law, the court noted the issue before it was procedural, and bore "an essential relationship to matters committed to our exclusive control by statute,"— in that case, the appellate review of patent trials. *Id.*

Although the law is unclear regarding whether the Federal Circuit would view the issues to be decided in this order as bearing an "essential relationship" to the underlying Tucker Act claim,[1] the court

---

1. Compare *Pickholtz v. Rainbow Techs., Inc.,* 284 F.3d 1365 (Fed.Cir.2002) (applying regional circuit law to an award of attorneys' fees under Federal Rule of Civil Procedure 37, finding it "a procedural issue not unique to patent law") *with Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,* 837 F.2d 465, 467 (Fed.Cir.1988) (stating that an award of attorneys' fees under the

believes the language of the URA supports a finding that the pending issues are sufficiently related to the underlying action to merit application of Federal Circuit law. The URA requires a district court rendering a judgment "in a proceeding brought under [the Tucker Act]" to "determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court ... reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney ... fees, actually incurred because of such proceeding." 42 U.S.C. § 4654(c). Because the URA provides the mechanism through which attorneys' fees may be awarded for a Tucker Act claim, it appears to this court that a determination of attorneys' fees under the URA would bear the type of "essential relationship" to the plaintiffs' Tucker Act claim such that the Federal Circuit would apply its own law to issues of whether a URA fee award is proper and whether reconsideration of such an order is warranted. As set forth later in the opinion, however, the distinction between Federal Circuit and Tenth Circuit law may be one without a difference, because the court would reach the same outcome under both standards.

## II. Motion to Reconsider

■■■ "[P]rior to the entry of a final judgment, the district court retains the discretion to reconsider and revise" interlocutory orders. *Richmond v. Crow,* 61 F.3d 916, 1995 WL 350800, at *3 n. 2 (10th Cir.1995) (Table, text in Westlaw) (citations omitted). Motions for review of interlocutory orders fall within "the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment, and, as such, did not call into play the timing and tolling considerations attendant upon motions to alter or amend judgment under Fed. R.Civ.P. 59(e)." *Wagoner v. Wagoner,* 938 F.2d 1120, 1122 n. 1 (10th Cir.1991).

■■ Federal Rule of Civil Procedure 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Whether to grant or deny a motion for reconsideration is committed to the court's discretion. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.,* 130 F.3d 1381, 1386 (10th Cir.1997); *Hancock v. City of Okla. City,* 857 F.2d 1394, 1395 (10th Cir.1988). In exercising that discretion, courts in general have recognized three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Marx v. Schnuck Mkts., Inc.,* 869 F.Supp. 895, 897 (D.Kan.1994) (citations omitted); D. Kan. Rule 7.3 (listing three bases for reconsideration of order). "Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination.... A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider." *Sithon Maritime Co. v. Holiday Mansion,* 177 F.R.D. 504, 505 (D.Kan.1998) (citations omitted). Plaintiffs request the court to reconsider its March 3, 2003 order due to

Equal Access to Justice Act "is a judgment independent of the result on the merits"); *see also Marquip, Inc. v. Fosber Am., Inc.,* 198 F.3d 1363, 1369 (Fed.Cir.1999) (applying regional circuit law to decision on Federal Rule of Civil Procedure 60(b) motion for relief from judgment, finding it a "purely procedural question not pertaining to patent law"); *Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.,* 12 F.3d 1080, 1082 (Fed.Cir. 1993) (same).

alleged changes in intervening law since the time briefing closed—specifically, the cases of *Applegate v. United States,* 52 Fed. Cl. 751, 767–70 (June 27, 2002), and *Town of Grantwood Village v. United States,* 55 Fed. Cl. 481 (Fed.Cl.2003). The court reviewed *Applegate* and *Grantwood Village* in preparing the March 3, 2003 order. The court has reviewed the March 3, 2003 order and does not believe that either case cited by plaintiffs supports a different result. Upon its review, the court finds no basis for reconsideration of the March 3, 2003 order. The March 3, 2003 order was not the result of clear error or manifest injustice. Further, plaintiffs have not identified any new evidence pertinent to that order. Plaintiffs' motion for reconsideration is denied.

● **Plaintiffs' Petition for Reimbursement of Fees and Costs Under 42 U.S.C. § 4654(c) and Plaintiffs' Supplemental Submission to their Revised Submission of Fees and Costs**

The court herein incorporates the background and analysis sections set forth in the March 3 order. The court's starting point in determining reasonable attorneys' fees is the lodestar, obtained by multiplying "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (quoting *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). After discussing the extent to which plaintiffs' revised billing records are reasonable, the court will determine the reasonableness of the rates charged by plaintiffs' attorneys.

**A. Reasonable Hours**

The court determined in the March 3 order that plaintiffs may not recover attorneys' fees for work expended in pursuit of other cases which were severed from the Swishers' action; for the failed motion for class certification and other class-action related expenses; for plantiffs' failed attempt to add a $10,000 claim on behalf of Galen Swisher; for policy-related work; for entries that are not sufficiently specific; and for work expended in opposing the motion to intervene by Rails–to–Trails, Inc. In accordance with the March 3 order, plaintiffs have designated certain items within their revised billing record as attributable to the items held excludable by the court.

● **Exhibit 1A**

 The court has reviewed the billing records submitted by plaintiffs. Although "pre-litigation expenses are precluded from reimbursement under 42 U.S.C. § 4654(c), *Emeny v. United States,* 208 Ct.Cl. 522, 526 F.2d 1121, 1124 (Cl.Ct. 1975), 'the significant effort expended' in 'the filing of the petition' may be compensable under the statute if proper documentation were provided." *Yancey v. United States,* 915 F.2d 1534, 1543 (Fed.Cir.1990) (quoting *Cloverport Sand & Gravel Co. v. United States,* 10 Cl.Ct. 121, 124 (1986)). Further, "[t]he leeway accorded by the presumption of reasonableness does not extend to fees which are arguably incurred as part of a prior proceeding." *Rose Acre Farms, Inc. v. United States,* 55 Fed. Cl. 643, 666, 2003 WL 1717510, at *25 (Fed.Cl. Mar.20, 2003).

● **Invoice 1: Exhibit 1A p. 1–16**

Exhibit 1A consists of billing records for work by the firm The Ackerson Group, L.C., now Sommer, Barnard, Ackerson, P.C., of Washington, D.C (hereinafter "Ackerson"). Plaintiffs have designated the billing records submitted in Exhibit 1A p. 1–16 (Invoice 1) as "Tucker Act Class Actions: General." Plaintiffs have already designated fees excludable due to work on the failed motion for class certification. However, the court still must determine

whether it is reasonable to award attorneys' fees for work expended on behalf of additional plaintiffs who were part of this suit prior to the time that the first complaint naming only the Swishers was filed.[2] In this case, plaintiffs' counsel initially sought to bring a class action on behalf of several plaintiffs, including the Swishers. The original complaint filed by plaintiffs' counsel on October 2, 1998, named plaintiff Cheryl Swisher and three other plaintiffs. On December 22, 1998, five additional plaintiffs were added. At that time, the total number of plaintiffs, including the Swishers and counting spousal pairs as one plaintiff, was nine. The court then severed the claims of the original plaintiffs who resided outside Kansas, and transferred the severed complaints to other federal district courts on July 26, 1999. The first complaint on behalf of only plaintiffs Cheryl and Galen Swisher was filed on November 30, 1999.

Plaintiffs have submitted billing records dating back to November 14, 1996, which do not specify whether the work was conducted on behalf of Cheryl and Galen Swisher. For example, some items for which plaintiffs seek to recover fees include a $1,575.00 charge on January 10, 1997 for time spent "review[ing] and edit[ing] the draft complaint," a $225.00 charge on March 6, 1997, for "continued review of cases and procedure;" and "plan[ning] of meetings with clients," and a $776.25 charge on April 25, 1997, for research of "local rule issues for Court of Federal Claims awards of costs in Tucker Act cases."

■ Although the court finds that some of the billing records designated by plain-

tiffs' counsel as "Tucker Act Class Actions: General" may reflect charges that defense counsel would have incurred if they had sought to bring the instant action only, the documentation is insufficient to determine whether all of the requested fees should be attributed to this action. *Accord id.* Uncertainties arising from imprecise record-keeping must be resolved against the claimant. *Id.* (quoting *White Mountain Apache Tribe v. United States,* 30 Fed. Cl. 8, 21 (1993)).

In light of this standard, the court believes that a reasonable award of attorneys' fees for the items designated as "Tucker Act Class Actions: General" in Exhibit 1A, p. 1–16 (Invoice 1), is one-ninth of the total amount billed. Awarding one-ninth of the revised total amount reasonably apportions the total amount to reflect the Swishers' percentage of the fees expended on behalf of the nine plaintiffs that existed in the lawsuit following the court's grant of plaintiffs' motion to amend their complaint on December 22, 1998. Accordingly, the court finds that a preliminary total[3] of $13,176.56, or one-ninth of $118,589.00, reflects reasonable attorneys' fees billed in Exhibit 1A, p. 1–16 (Invoice 1).

● **Invoice 2: Exhibit 1A, p. 17–32**

This section of plaintiffs' exhibit is denominated by plaintiffs as work on "Tucker Act Class Actions RE: Swisher, Cheryl (KS)." The $1,200 paid by plaintiffs to their attorneys is credited to this billing record. In accordance with the March 3 order, plaintiffs have identified and deleted certain items within this billing record items held excludable by the court. The

---

**2.** In the March 3 order, the court found "that plaintiffs may not receive an award of attorneys' fees for work expended in pursuit of the cases which were severed from the Swishers' action or for any other cases outside the jurisdiction of this court."

**3.** The court notes that the preliminary totals set forth in this section will be reduced to account for historic billing rates and, in the case of Ackerson, quarter-hour billing as discussed later in the opinion.

court finds that the revised billing records attached as Exhibit 1A, p. 17–32 (Invoice 2), accurately reflect expenses attributable to plaintiffs' counsel's work on behalf of plaintiffs in this case. The court determines that a preliminary total of $99,160.00 for attorneys' fees submitted in Exhibit 1A, p. 17–32 (Invoice 2) is reasonable.

### c. Invoice 3: Exhibit 1A, p. 33–36

The court finds that the revised billing records attached as Exhibit 1A, p. 33–36 (Invoice 3), accurately reflect expenses attributable to plaintiffs' counsel's work on behalf of plaintiffs in this case. The court determines that a preliminary total of $38,795.19 for attorneys' fees submitted in Exhibit 1A, p. 33–36 (Invoice 3) is reasonable.

### • Exhibit 1B

The court finds that the revised billing records attached as Exhibit 1B, submitted by the Wichita, Kansas law firm of Foulston, Conlee, Schmidt & Emerson, L.L.P. (hereinafter "Foulston"), accurately reflect expenses attributable to plaintiffs' counsel's work on behalf of plaintiffs in this case. The court determines that a preliminary total of $24,442.00 for attorneys' fees submitted in Exhibit 1B is reasonable.

### • Exhibit 1C

Exhibit 1C consists of billing records submitted by the Minneapolis, Minnesota office of the firm Zelle, Hoffman, Voelbel, Mason & Gette, L.L.P. (hereinafter "Zelle"). Exhibit 1C includes billing records listing charges for work opposing Rails–to–Trails, Inc.'s motion to intervene, which plaintiffs failed to omit in their revised statement of fees and costs, totaling $87.00 (p. 50 lines 265 and 291). After subtracting these charges from plaintiffs' revised fee request, the court finds that a preliminary total of $4,398.00 for attorneys' fees submitted in Exhibit 1C is reasonable.

### 4. Plaintiffs' Supplemental Submission to their Revised Submission of Fees and Costs

Plaintiffs request reimbursement for attorneys' fees expended since they filed their original fee petition on January 29, 2002. In particular, plaintiffs seek to recover fees and costs incurred from (1) January 18–29, 2002, for finalizing their initial request for fees; (2) January 30—March 26, 2002, for preparing plaintiffs' reply to defendant's response to plaintiffs' petition for fees and costs, and withdrawal of certain fees; as well as fees for (3) finalizing the stipulation and updating the case; and (4) responding to the March 3 order requesting adequate documentation and preparing the motion for reconsideration.

. Defendant does not object to an award for effort expended in item (3). The court finds that the billing records attached to plaintiffs' supplemental submission for item (3) for time spent finalizing the stipulation and updating the case accurately reflect reasonable expenses attributable to plaintiffs' counsel's work on behalf of plaintiffs in this case. The court determines that a preliminary total of $2,435.00 for attorneys' fees expended by Ackerson submitted in connection with these expenses is reasonable.

Defendant objects, however, to items (4) and portions of item (2). In item (4), plaintiffs seek to recover expenses they incurred after the court ordered them to submit revised billing records so that the court could make a reasonable fee award. In the March 3 order, the court stated that the documentation plaintiffs had submitted to the court provided an inadequate basis for the court to determine a proper award of attorneys' fees. "An attorney may not recover fees from an adversary that could not be billed to the client; such fees are presumptively unrea-

sonable." *Sheldon v. Vermonty,* 237 F.Supp.2d 1270 (D.Kan.2002) (citing *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1249 (10th Cir.1998)). The court finds that a fee award for the items plaintiffs seek in item (4) would be inappropriate, because the court required plaintiffs to correct inadequacies reflected in documents plaintiffs had already submitted to the court. *Cf. Grantwood Vill.,* 55 Fed.Cl. 481 (awarding fees for time spent correcting a complaint when correction was required by an intervening change in case law).

■ Moreover, the court does not believe that awarding fees for plaintiffs' work on the motion to reconsider the March 3 order is appropriate. As set forth earlier in this order, the court did not find a basis for reconsideration. Plaintiffs have not cited, nor has the court found upon its review, any case law supporting an award of attorneys' fees for a motion to reconsider a fee award. Accordingly, the court denies plaintiffs' supplemental motion to the extent it seeks to recover fees for item (4).

Defendant states that plaintiffs should not recover for all of the fees submitted in item (2), because plaintiffs reiterated arguments that were later rejected by the court, and withdrew their initial fee request and submitted revised billing statements, stating their initial request for class action-related fees was inappropriate. Reasonable efforts to obtain attorneys' fees are compensable under the URA. *E.g., Fla. Rock Indus. v. United States,* 23 Cl. Ct. 653, 656 (1991). Even though plaintiffs did not prevail on all of the arguments advanced therein, and withdrew fees previously requested, the court believes plaintiffs' reply reflected reasonable advocacy. The court finds that the expenses associated with item (2) are reasonable. In the same vein, the court finds that the records submitted by plaintiffs in item (1), in connection with finalizing their initial request for fees, reflect reasonable charges.

After subtracting the $25,026.00 requested by plaintiffs with regard to item (4), the court finds that a preliminary total of $55,430.00 with regard to plaintiffs' Supplemental Submission to their Revised Submission of Fees and Costs is reasonable. Of the preliminary total, $52,455.00 consists of fees attributable to Ackerson and $2,975.00 is attributable to work conducted by Foulston. The court finds that the preliminary totals for fees including the revised and supplemental requests are:

> Ackerson: $13,176.56 (Invoice 1) Foulston: 24,442 Zelle: $4,398.00
> 99,160.00 (Invoice 2) + 2,975 (Supplemental)
> 38,795.19 (Invoice 3) $27,417
> + 52,455.00 (Supplemental)
> $203,586.19

● **Reasonable Rate**

Having determined the extent to which the items submitted by plaintiffs reflect reasonable charges, the court turns to the question whether it is appropriate to reduce the preliminary total. Defendant argues the court should reduce the rates charged by plaintiffs for three reasons, claiming that: (1) the court should define the community relevant to this litigation as Kansas, and apply the prevailing rates charged by comparable attorneys in Kansas; (2) the court should apply historical rather than current rates; and (3) the court should reduce the rates in order to account for the quarter-hour billing practice of plaintiffs' counsel.

**1. Relevant Community**

■ A court assessing attorneys' fees should apply a reasonable rate, defined as one "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience

and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104. S.Ct. 1541, 79 L.Ed.2d 891 (1984). The court's determination of an appropriate "market rate" in this case—a process the Supreme Court has recognized as "inherently difficult," *id.* at 896, 104 S.Ct. 1541—is complicated by the fact that the court must determine whether to apply rates in accord with those charged in the diverse geographic locations of counsel chosen by plaintiffs. Plaintiffs, who reside in Kansas, brought this action concerning land in Kansas, and chose to file it in the District of Kansas. Another forum available to plaintiffs was the United States Court of Federal Claims, located in Washington, D.C. Attorneys for plaintiffs are located in Washington, D.C. (Ackerson), Wichita, Kansas (Foulston), and Minneapolis, Minnesota (Zelle).

The Supreme Court has not defined what constitutes a relevant community for purposes of determining attorneys' fees. The court's review of case law concerning awards of attorneys' fees generally, and URA cases in particular, supports a finding that the court should evaluate the rates charged by the attorneys in this case in light of the rates charged by other attorneys with comparable skill, experience, and reputation in the locations in which they practice.

In *Branning v. United States,* 7 Cl.Ct. 777 (1985), the court declined to adopt defendant's argument that it should apply fees consistent with those charged in South Carolina, where the case arose, or in Georgia, where the damages phase of the case was tried. *Id.* at 782. Noting that the plaintiff was represented with "great competency" by a Washington D.C.-based firm, the court applied rates in accord with those charged by comparable attorneys in the D.C. area. The court stated that:

In this court of national jurisdiction, a claimant should be entitled to select any member of the bar of this court in whom the claimant has confidence, irrespective of whether the attorney resides in the locality where the cause of action arose, or in the place where the trial is held, or in some other place.

*Id.* at 783. Defendant argues that the above language from *Branning* militates against application of Washington, D.C. and Minneapolis rates in this case, because plaintiffs chose to file the case in Kansas rather than the Court of Federal Claims. The court disagrees. As noted above, the Federal Circuit, also a court of nationwide jurisdiction, would exercise exclusive appellate jurisdiction over this action. The court should not restrict the market for plaintiffs' choice of trial counsel to only local or regional counsel when the reviewing court would not apply the same restriction.

Once a plaintiff has chosen counsel, however, the Court of Federal Claims defines the relevant market for determining attorneys' fees as the geographic area in which the plaintiff's attorney practices. As the court stated in *Branning,*

[I]t seems entirely reasonable to hold that, if the claimant is successful in a taking case, the Government's obligation to reimburse the claimant for reasonable attorneys' fees should be based on the fees customarily charged by the particular attorney to other clients for similar services, subject to a possible adjustment upon a showing (which is not involved here) that the attorney's rates are substantially in excess of the rates charged by other similarly qualified attorneys practicing in the same area where the claimant's attorney customarily practices.

*Id.* Likewise, in *Grantwood Village,* another URA rails-to-trails case, plaintiff's counsel, a large regional firm with offices in Kansas City, St. Louis, and Washington D.C., requested the Court of Federal

Claims to apply current nationally averaged rates rather than the rates customarily charged by attorneys in St. Louis, where plaintiff's attorneys practiced. 2003 WL 1135533, at *5. Plaintiffs argued that the complexity and size of the litigation merited application of a nationwide rate. The court denied plaintiff's request, finding that the "relevant community" is the geographic area in which the plaintiff's attorney practices, and applied rates reasonable in St. Louis. *Id.* (citing *Rupert ex rel. Rupert v. Sec'y of Dep't of Health & Human Servs.,* 52 Fed. Cl. 684, 687 (2002)).

Defendant argues that the above decisions of the Court of Federal Claims construing the prevailing community as the community in which the attorney practices are irrelevant to this case, because this action arose in and was prosecuted solely in Kansas. Defendant proposes that the court should instead follow decisions of the Tenth Circuit. Even under the Tenth Circuit's standard, however, the court would reach the same result. The Tenth Circuit defines the relevant community for the purposes of attorneys' fee awards as the area in which the litigation occurs. *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983) (applying local rate to civil rights litigation involving prison conditions). "Unless the subject of the litigation is 'so unusual or requires such special skills' that only an out-of-state lawyer possesses, 'the fee rates of the local area should be applied even when the lawyers seeking fees are from another area.'" *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir.1995) (applying local rate to constitutional challenge of state abortion law) (citing *Ramos v. Lamm,* 713 F.2d at 555).

The law is unclear whether the Tenth Circuit would consider this case as falling within the unusual set of circumstances permitting application of the rates charged by a non-local attorney. However, plaintiffs have presented the court with sufficient evidence to justify such a finding. In particular, plaintiffs attach a detailed affidavit from plaintiff Cheryl Swisher in which she states that, after contacting the Kansas Bar Association, she was unable to locate a Kansas attorney with experience in rails-to-trails conversion cases that was willing or able to litigate a takings claim against the United States on a contingency fee basis. She further stated she would not have been able to afford to maintain the action unless she found representation on a contigency basis. In addition, she stated she became aware of Nels Ackerson's firm after the American Farm Bureau Federation recommended it to her. Plaintiff Swisher stated she concluded that after a good deal of effort in searching for an attorney, she believed Mr. Ackerson's firm was the only firm that was capable of litigating her case and was willing to do so on a contingency basis. Plaintiffs also provide documentation setting forth the Ackerson firm's extensive experience in litigating Tucker Act rails-to-trails conversion cases.

Based upon plaintiff Swisher's sworn statement, as well as the court's own assessment that this case presents issues not routinely litigated in the District of Kansas, the court believes plaintiffs have set forth a sufficient basis for the court to conclude that the relevant market for determining attorneys' fees in this case must be broader than the state of Kansas.[4] The

---

4. The court clarifies it does not go so far as to opine that no members of the Kansas bar would be capable of, or willing to, litigate this case on a contingency basis. Rather, the court finds plaintiffs have set forth sufficient

evidence to show that Cheryl Swisher's search for representation was sufficiently extensive and that her choice of counsel was reasonable in light of the unique nature of this case.

court finds that, under either the Court of Federal Claims or the Tenth Circuit standard, evaluation of the rates charged by plaintiffs' counsel in light of the rates charged by other attorneys of similar skill and experience in the geographic areas in which they practice is warranted.

## 2. Reasonableness of Rate

### a. Ackerson

Defendant does not argue that the fees charged by Ackerson are unreasonable in light of fees charged by attorneys of comparable experience in Washington, D.C. In support of their counsel's rates, plaintiffs have attached results of a survey of Washington law firms, which indicates that 39% of firms of size similar to plaintiff's firm charge rates within the same range.[5] In addition, plaintiffs attach the affidavits of Mr. Ackerson and Cecilia Fex, attorneys from the firm, attesting to their exhaustive experience in litigating rails-to-trails cases. Based upon the court's review of the statistics provided by plaintiffs, and in light of the significant experience of plaintiffs' counsel and the favorable results obtained in this case, the court finds that the rates charged by plaintiffs' firm are reasonable.

### b. Foulston

Defendant contends that the court should reduce the rates charged by Foulston because they do not reflect the prevailing rates charged by attorneys in Kansas. John Foulston, a partner, charged $250 per hour.[6] Individuals designated as JA and BH are billed at $100 and $125 per hour, respectively. In support of this rate, plaintiffs attach a declaration of Mr. Foulston, in which he states that the partners working on this case had accumulated sig-nificant litigation experience (including over 35 years of experience accrued by Mr. Foulston), and that the hourly rates charged by their firm are consistent with comparable rates charged by attorneys and paralegals of similar experience and skills on matters of similar complexity in Wichita, Kansas. Further, plaintiffs attach a declaration of Philip L. Bowman, a Wichita attorney, who attests that he has practiced law for over 40 years and is acquainted with Mr. Foulston, believes that $250 per hour for Mr. Foulston is well within the prevailing rates for complex civil litigation in Wichita, Kansas.

Defendant contends that Foulston's rates are too high, given the fact that this case involved a single claim. Defendant cites several cases from the District of Kansas in support of the contention that the court should reduce plaintiffs' requested rate. *E.g., Albert v. Wesley Health Servs.*, 2001 WL 1000951, at *2 (D.Kan. Aug.24, 2001) (rejecting requested $225 hourly rate and selecting $135 in single-claim Title VII sexual harassment case). However, plaintiffs point out that Kansas courts have determined that fees of up to $300 per hour for complex litigation in Wichita are reasonable. *E.g., Link, Inc. v. City of Hays*, 268 Kan. 372, 382–83, 997 P.2d 697, 704 (2000); *City of Wichita v. BG Prods., Inc.*, 252 Kan. 367, 375, 845 P.2d 649, 654 (1993). Neither party has cited, nor has the court located upon its own review, a case addressing a determination of fees under closely paralleled circumstances to the case at bar, involving a very experienced attorney and property rights litigation in Wichita. After considering the range of rates held reasonable by Kansas courts, as well as the level of expe-

---

**5.** Mr. Ackerson bills at a rate of $450 per hour.

**6.** The revised statement of fees and costs contains only one billing record for John Conlee, of $150 reflecting a rate of $250 per hour. No billing records reflecting the work of Kari Schmidt are included in the revised statement.

rience, the complexity of this litigation, and the results obtained, the court finds that the rates charged by the Foulston firm are reasonable.

### c. Zelle

Plaintiffs have provided no legal or factual support for the rates assessed by Zelle, leaving the court to conduct its own review of the reasonableness of the firm's rate in light of those charged by other Minneapolis firms. Further, plaintiffs provide no affidavits setting forth the degree of experience of the attorneys in this firm. In *Parke v. First Reliance Standard Life Ins. Co.*, the court held that a rate of $180 to $205 per hour was a reasonable rate charged by an ERISA attorney in the Minneapolis–St. Paul metropolitan area. 2003 WL 131731, at *3–4 (D.Minn. Jan.8, 2003). Further, in *Burrell v. Kubes Dental Care*, the court held that $200 per hour was a reasonable rate for an attorney involved in an employment discrimination case. 1996 WL 380666, at *2 (Minn.Ct. App. Jul.9, 1996).

Given the record before the court, and the court's examination of rates held reasonable by courts awarding fees to attorneys who practice in the Minneapolis–St. Paul area, the court reduces the top rate charged by the Zelle attorneys from $400 per hour to $250 per hour. Furthermore, the court reduces all other rates charged by the firm by 37.5%, in line with the decrease in the top rate set out above.

### 3. Historic Rates

■ Defendant contends plaintiffs' claimed rates are inflated because those rates reflect current billing rates, rather than the rates that were in place at the time the fees were incurred. In *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), the Supreme Court held that interest on an attorneys' fee award cannot be recovered in a suit against the United States without an express waiver of sovereign immunity. *Id.* at 311, 106 S.Ct. 2957. Plaintiffs point out that in *Shelden v. United States*, the Court of Federal Claims explicitly considered the Supreme Court's holding in *Shaw*, but found that: The Relocation Act does not expressly grant successful plaintiffs the right to recover interest and as the government points out compound interest is counted into the judgment award. This court agrees that the proper method for calculating attorneys fees is not interest, but it is proper to use current rates as long as they are reasonable. In using the lodestar method to calculate attorney fees, a court simply multiplies the number of hours by a reasonable rate.

41 Fed. Cl. 347, 351 (1998). However, in *Preseault v. United States*, the Court of Federal Claims rejected the same argument advanced by plaintiffs in this case— that billing at current hourly rates is appropriate to compensate for "delay" and "lost opportunity":

> Plaintiffs' request to be compensated for "delay" and "lost opportunity" is tantamount to a request for interest on their attorneys' fees and expenses. [*Shaw*, 478 U.S. at 322, 106 S.Ct. 2957] ("Interest and a delay factor share an identical function. They are designed to compensate for the belated receipt of money."). Although the Fifth Amendment itself provides for interest as an aspect of "just compensation," *id.* at 317 n. 5, 106 S.Ct. 2957, "[a]ttorneys' fees and expenses are not embraced within just compensation for land taken by eminent domain," *Dohany v. Rogers*, 281 U.S. 362, 368, 50 S.Ct. 299, 74 L.Ed. 904, (1930). Because waivers of sovereign immunity to suit must be read against the backdrop of the no-interest rule, a general waiver as to attorneys' fees, without more, does not waive the sovereign's immunity from interest. *Shaw*, 478 U.S. at 318–19, 106 S.Ct. 2957.

Recognizing this limitation, plaintiffs amended the majority of their petition to request only fees actually billed.

52 Fed. Cl. 667, 677 (2002). None of the records before the court indicate the difference between the rates assessed by plaintiffs' attorneys and the true historic rate. Accordingly, the court concludes that an additional 15% reduction in allowable attorneys' fees is necessary to arrive at a reasonable reimbursement. *Accord id.* at 681 (reducing overall fees by 20% to account for duplicative billing, and citing cases); *Cloverport,* 10 Cl.Ct. at 125 (10% reduction for duplication of efforts under URA); *cf. Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that trial courts have discretion to reduce fee pro rata according to degree of success achieved); *Cmty. Heating & Plumbing Co. v. Garrett,* 2 F.3d 1143, 1146 (Fed.Cir.1993).

#### 4. Quarter–Hour Billing

 Defendant claims plaintiffs' fees should be reduced in order to account for Ackerson's practice of billing at quarter-hour intervals.[7] Defendant argues that quarter-hour billing in Kansas has been "virtually extinct for some time," placing upon "counsel who use such a method of timekeeping [ ] a heavy burden of showing that the claimed hours are an accurate representation of counsel's true hours." *Glover v. Heart of America Mgmt. Co.,* 1999 WL 450895, at *7 (D.Kan. May 5, 1999). Plaintiffs argue that they should not be required to adhere to standards required in the Kansas community because Washington, D.C. is the relevant community for the purpose of determining a reasonable rate. Plaintiffs cite cases from federal districts outside Washington, D.C., in which courts concluded, inter alia, that quarter-hour billing does not require a per se reduction. *E.g., Morimanno v. Taco*

*Bell,* 979 F.Supp. 791, 799 (N.D.Ind.1997) (observing that "[b]illing by the quarter-hour does not ipso facto call for a reduction" in a fee award under 42 U.S.C.1988). However, plaintiffs also cite a decision of the Court of Federal Claims in which the court found "that billing in quarter-hour increments [is] unreasonable since many tasks [telephone calls and reviewing documents] simply do not take that long," where counsel provided no support for the proposition that such a billing practice was accepted in the counsel's community. *Winters v. Sec'y of Dep't of Health and Human Serv.,* 1993 WL 114646 (Fed.Cl. 1993).

The court finds plaintiffs have not offered sufficient support for the proposition that quarter-hour billing is an accepted practice in Washington, D.C., or in any other market, for that matter. Further, plaintiffs have not provided the kind of extensive, detailed support that each billing record was an accurate representation of the time spent on the case. Accordingly, the court reduces the total fees billed by Ackerson by 12.5%. *Accord Glover,* 1999 WL 450895, at *7 (applying a 12.5% reduction); *Ramsey v. State of Ala. Pub. Serv. Comm'n,* 2000 WL 426187, at *5 (M.D.Ala. Apr.13, 2000) (same); *Fox Valley Laborers Fringe Benefit Funds v. Pride of Fox Masonry Expert Restorations,* 1996 WL 263229, at *1 (N.D.Ill. May 14, 1996) (same).

#### 5. Fees Total

After applying the percentage reductions discussed above, the court arrives at the following total representing attorneys' fees:

Ackerson: $203,586.75 divided by 27.5% = $147,600.41

---

7. Only the records submitted by Ackerson are billed in quarter-hour intervals.

Foulston: 27,417.00 divided by 15% = 23,304.45

Zelle: 4,398.00 divided by 52.5% = 2,089.05

Total Fees awarded = $172,993.91

● **Costs**

The court computes costs by reducing the requested costs by the percentage representing the difference between the total claimed attorneys' fees and the fees awarded in the subtotal above.

The total requested fees and costs data is from Exhibit 1, page 1 of Plaintiffs' Submission of Revised Fees and Costs, and from Exhibit 1 of Plaintiffs' Motion for Supplemental Fees and Costs.

Ackerson: Requested $332,804.00 in Fees; $9,215.00 in Costs

Received $147,600.41 in Fees, or 44.35% of request

Costs awarded = 44.35% of 9,215 = $4,086.85

Foulston: Requested $28,736.00 in Fees; $183 in Costs

Received 23,304.45 in Fees, or 81.10% of request

Costs awarded = 81.10% of 183 = $148.41

Zelle: Requested $4,485.00 in Fees; $716 in Costs

Received 2,089.05 in Fees, or 46.00% of request

Costs awarded = 46.00% of 716 = $329.36

Total Costs awarded = $4,564.62

● **Order**

**IT IS THEREFORE ORDERED THAT** plaintiffs' Motion to Reconsider Decision to Exclude Certain Fees (Doc. 163) is denied.

**IT IS FURTHER ORDERED THAT** plaintiffs' Joint Motion to Reactivate Plaintiffs' Petition for Reimbursement of Fees and Costs Under 42 U.S.C. § 4654(c), the

Uniform Relocation Assistance and Real Property Acquisition Policies Act (URA) (Doc. 161) is granted in part and denied in part.

Plaintiffs are awarded $172,993.91 in attorneys' fees and $4,564.62 in costs.